APPEAL from chancery, New Castle county. Before all the law judges.
The bill stated that Samuel Comly, being a commission merchant in Philadelphia, and Waters, Laird Ridpath, cotton manufacturers on the Brandywine, the complainant made large advances to said firm, who gave him a bond, dated 21st February, 1834, for $15,000, with interest, on which judgment was entered on 27th November, 1837, and execution issued to May term, 1838. The said bond was given as collateral security to Comly on account of advances, and the said firm were indebted to him at the issuing of the execution, on such account $60,000: — that Waters and Laird on 18th April, 1837, gave a bond to McMakin, Burgess Kelly, for $18,690 63, on which judgment was entered on 20th April, 1837, and fi. fa. was issued to May term, 1837, and levied on their goods, which were sold for $16,669 50: — that said bond was without consideration (except as to $400,) *Page 118 
fraudulent and void: the judgment void; and complainants execution was entitled to the money, deducting rent, c. It prayed an injunction against this judgment, and an order on the sheriff to bring the money into court.
The answer of Waters, Laird Ridpath denied any indebtedness to Comly at the date of their bond to him; which was given as collateral security for advances that might subsequently be made to them; and at the issuing of his writ they did not owe him more than $15,000 00. Defendants' partnership expired in July, 1836, and was continued by Waters Laird, under the name of John Waters, who bought out Ridpath: — that the bond of Waters Laird to McMakin, Burgess and Kelly for $18,690 63, was given in consideration of a debt due to Kelly of $400 00, and the balance in trust for other creditors: — that Comly in December 1836, presented an account to Waters Laird, claiming a balance of $38,000; which was grossly erroneous. To accommodate Comly, they drew notes to the amount of $40,000: afterwards renewed to the amount of $13,000, which he disposed of. These were all accommodation notes. Besides these he had other business notes of Waters Laird, amounting, with said accommodation notes, to $60,000. Comly failed in the spring of 1837, Waters and Laid being his endorsers for $20,000, besides their liabilities on these accommodation notes; and, being apprehensive of ruin, they made the bond aforesaid to McMakin, Burgess and Kelly in trust to pay their workmen and other creditors, according to schedule; which they insist was a lawful and sufficient consideration.
Decree 2d March, 1840, ordering a perpetual injunction on the bond and judgment of McMakin, Burgess and Kelly, except as to $400 due Kelly and costs. From this decree the appeal was taken.
Booth, for appellant. — The chancellor refused an issue on the ground that a trust could not be created without writing, and therefore it was immaterial to try any issue as to the alledged trust of the bond to McMakin, Burgess Kelly. 1st. A trust of personal property may be averred and proved by parol. (3 Dallas 506-7-8; 1Johns. Ch. Rep. 119.) Trusts of personal property are not within our statute of frauds. And a declaration of trust in reference to personal property may be by parol. (1 Milne King
506; 7 Cond. Eng. Ch. Rep. 143, Benbow vs.Townsend; 4 Russ. 345; 3 ib. 698-9,Bayley vs. Boulcott.) 2d. The execution of the bond to McMakin, Burgess Kelley did not contravene the act of assembly against preferring creditors. (Dig. 140.) This act is designed to prevent assignments by insolvents giving preferences, which might be done before, and is *Page 119 
now done in many of the States. The object was to prevent frauds in making assignments by insolvents; but can this extend to a bond
given in payment of a just debt. This is not wrong, it is often a duty. It is no assignment, which is a transfer of property; the bond only ascertains a debt? The chancellor could not have regarded the bond as void under that act; for, if void at all, it would be void altogether; and he decreed it good in part.
Rogers, jr. — 1st. Was there error in refusing the issue? The original act authorizing issues was passed in colonial times, when the judges of the common pleas had equity powers. (Dig. 103.) It has been followed by changes arising under two or three successive constitutions. It was designed to give a common law court, which had equity powers, the power to order issues, such as equity courts in England had; and which such a court would not have without grant. Our present Court of Chancery exists under the constitution, and has the common law power of English courts of equity in sending issues, and no other. Such have been the uniform construction and practice; and the sending of issues is in thediscretion of the chancellor. If this be so, there can be noappeal from the decision of the chancellor refusing an issue. (1 Harr. Rep. 401; 1 Johns. Ch. Rep. 459;Smith vs. Brush; 6 ib. 255, Dale
vs. Rosevelt; 18 Vesey 481; Prec. Ch. 13.) The issues asked were immaterial in the cause; the object being to establish by parol a trust as a consideration for the bond to McMakin, Burgess Kelly. The trust is denied; and there is noevidence adduced in support of it. The answer is not responsive to the bill in this matter, and not evidence in itself. If I admit then, that a trust of personal estate might be proved by parol, where is the proof? 2d. But I deny that it can be proved by parol; and this not merely on account of the statute of frauds, but because of a great common law rule of evidence, that an instrument of writing, such as this, absolute on its face, cannot be qualified by parol. (3Stark Ev. 995-6-8, 1002-9; Rob'ts. on Frauds 10-9;Lewen on Trusts 26; 24 Law Lib. 14; 3 Brown's Ch.Rep. 577, 587, n.) The only cases in which parol evidence is admissible, are cases of implied and resulting
trusts. (1 Vesey, Jr. 241; 1 Bay. Rep. 461.) A secret trust can never be recognized, except as between the trustees and cestuis que trust. Here the attempt is to set up a secret trust; to be proved by parol; against a writing under seal; and against a creditor: to effect a fraud, not to prevent one. There is no case to be found in which a trust of personal property has been established by parol. (3Brown's Ch. Rep. 587.) 3d. A private agreement with one creditor to secure him *Page 120 
more than another is void. Many secret agreements, though good between the parties, are fraudulent as to third persons. (1 Burr. Rep.
474-5; Twyne's case, 3 Rep. 80, b., 81,a.) The admission of the answers is, that the object of making the bond to McMakin, Burgess Kelly, was to avoid the liability under Comly's bond, and to prefer other creditors to his exclusion. Such an intent avoids the bond, under the provisions of the statute 13th Elizabeth, chapter 5; which was declaratory of the common law, and has been adopted here. (1 Harr. Rep. 353; Smith's leadingcases 9; 19 Law Lib. 7. n.; Roberts on Fraud.Con. 490, 589; 12 Serg. Rawle 418, 455.) 2d. This bond is clearly void under our act of criminal insolvency. (Dig.
139.) The object of our law, like that of the English system of bankruptcy, is to effect an equal distribution of the insolvent's effects; and every contrivance to prevent this is fraudulent and void. (Cowp. Rep. 632, Rust vs. Cooper, 3Rep. 80, b., Twyne's case; 4 Burr Rep. 2239.) Acts done to defeat the bankrupt laws are void; though they do not bring the party criminally liable under such laws. (Roberts' Fraudt.Conv. 493, n.; Cowp. 632; 1 Pothier 1.)
The policy of our laws, unlike those of some of the other States, is precisely the same with the English bankrupt laws; to prevent frauds and distribute all the debtor's property equally among his creditors. This trust bond was designed to counteract this policy; if it be not an express violation of the act of fraudulent insolvency. Preference is a fraud of creditors; a fraud on the rest, as well as in fraud of the law. The intention of a trust cannot be established if it contravene the policy of the law. (Lewen on Trusts 137; 24 Law. Lib.
70.) If this be not a trust it is without consideration, except as to Kelly's $400, and is void; if it be a trust it contains a preference, as the schedule provides for the payment of but fifty per cent. of certain liabilities, and the whole as to others. This makes it void under the law.
J. A. Bayard, in reply. — The question whether an appeal may be taken from a decree refusing an issue, is too plain for argument; it is well settled by practice; and admitted by the chancellor himself. The act of assembly gives a right to the issue if asked for in proper time. 2d. The bond to McMakin, Burgess Kelly, was given to pay bona fide debts due to them and other creditors, according to a schedule. Is not a trust to pay creditors a sufficient consideration? If I can give my bond to B. in payment of my debt to him, I can include debts due from me to C. D. c., and the bond is available for the whole. It is a trust founded on a valuable consideration, and will *Page 121 
always be protected by a court of equity. Can a trust be proved by parol? Does it contravene the common law rule? The inquiry is as to the consideration of the bond; and, whether such consideration be for the use of the obligee or of a third person, does not matter, so that a consideration be proved. This bond is absolute on its face; yet it cannot be doubted that the cestuis que use could file their bill against the trustees or the obligors, and prove their interest as arising from a consideration different from that on the face of the bond: and shall not the trustees set up such consideration in answer to another? The bond does not set out any consideration, and is not contradicted by proof of a consideration moving from others than the obligees. And if the cestuis que trust can show a consideration, other than a direct one, so may the trustee; otherwise you render him liable to the cestuis que trust, without enabling him to set up the trust against others. (1 Johns.Rep. 119, Moses vs. Murgatroyde; 4 Russ.
347; 1 Mylne King 506.) There is no inconsistency in showing that the obligee is bound to pay the money to another. The debt is absolute to him; no matter to whom he may be subsequently responsible; and the responsibility to others being on account of bona fide debts due to them from the obligor, is a sufficient consideration for the bond as it regards him.
The bond is not void either under the statute of Elizabeth or our act against fraudulent insolvency. (Dig. 139-40, 306-7.) I deny the assumption that the object of our laws is to assimilate our insolent laws to the English bankrupt laws. I may admit that this bond was given in contemplation of insolvency; at least with a knowledge that they were in failing circumstances; and that it was done with a view to give one creditor the power of obtaining a preference to others. The law does not prohibit this. It has been done a thousand times, and has never yet been questioned. The act prohibits an assignment of property, andthus giving a preference; and yet this bond neither assigns property nor gives a preference. The English bankrupt laws have two objects; to prevent fraud; to equalize creditors and distribute property equally among them. I deny that there is any such object or policy in our law; its only object is to prevent fraud, and not to distribute property equally. The whole burden of the law is, that a man shall not fraudulently do certain acts. It specifies as a mode of fraud prohibited, the confession of a judgment without adequate consideration; thus leaving it as to the confession of judgments on valid consideration, in payment of bona fide debts, as at common law, a matter which the party, whether insolvent or *Page 122 
not, is entitled to do. Any other construction makes an act against fraudulent insolvency a bankrupt law; unsettles the practice in every case of insolvency, and opens a flood of litigation as to all the transactions of a man in failing circumstances. There could have been, no such intention. The English bankrupt system is peculiar to their policy; applies only to a particular class — traders — is designed to level all creditors to one standard, and distribute the property equally amongst them.
The chancellor assigned the reasons for his decree.
The defendants, under the act of assembly, and before commencing the hearing of the cause, the same having come on to be heard, applied to the chancellor to order the following as issues of fact to be tried by a jury at the bar of the Superior Court: 1. Whether there was any and what consideration existing at the time of the execution of the writing obligatory in the pleadings mentioned by the said John Waters and Thomas Laird, to Michael McMakin, Dennis Kelly and Robert Burgess. 2d. Whether the debts mentioned in the schedule annexed to the defendant's answer, constituted the consideration of the said writing obligatory; and whether the said debts were bona fide due and owing by the said John Waters and Thomas Laird. 3d. Whether the partnership existing between Thomas Laird, John Waters and Moses Ridpath was dissolved; and at what time the same was dissolved. 4th. Whether the interest of Moses Ridpath, in the property of the said firm of Waters, Laird Ridpath, was sold and assigned at any and what time, and for what consideration, to Thomas Laird and John Waters, or either of them.
The application I considered as made in time; but, while I recognize the right of the party to have tried by a jury, matters of fact which may happen to arise upon the examination or hearing of the matters and causes to be heard and determined, I must confine the exercise of the right to facts, and cannot extend it so as to constitute the jury an organ of inquiry, to search after, inquire and find out, whether any and what consideration existed; hence, upon the first proposition, as it alledges no distinct fact, I refused to order an issue.
With respect to the second, the existence of the debts as set forth in the schedule, and whether they constituted a part of the consideration of the said writing obligatory, I was inclined to the opinion that it did not present such a fact or facts as were intended to be embraced by the legislative provision. It appears to me the fact or *Page 123 
facts must be such as "would, when established, be available in supporting a consideration, so as to establish the indebtedness of Waters Laird to the execution creditor, which cannot depend on their indebtedness to third persons: nor could such a fact if established, have any effect either upon the amount of their indebtedness to the defendant. If a suit were pending at law upon the written instrument and the question of consideration open, the party would not be allowed to establish the fact of indebtedness to him by evidence showing that Waters Laird were also indebted to various other persons: nor could a judgment at law have been obtained on the writing obligatory by suit, so as to secure or authorize the recovery by execution of any sum beyond what was actually the real debt from Laird Waters to the present defendants, McMakin, Kelly Burgess. Hence, the second proposition appeared to me in reference to the matters and cause to be heard and determined in the court to be altogether immaterial, and the same matter, if it were tendered as an issue at law, would he immaterial. The same objection exists and seems equally applicable to the third and fourth propositions. They relate to facts which I did not consider I was called upon to determine; and, therefore, unnecessary to be sent to a jury to ascertain. For these reasons I refused to grant the order directing the several issues to be tried by a jury.
As to the final decree it was based, and, in my judgment, properly rests on the following reasons: —
The complainant charges by his bill, that the judgment on which the defendants' execution issued to levy and collect $1,800, was without consideration, except or beyond the sum of $400, that being the whole amount of debt due from the firm of Laird Waters, to one of the defendants. The answer admits that no more than $400 was due as stated in the bill of complaint, but insists that the excess was by a parol agreement between the obligors and obligees in the bond intended to be for the benefit, and to secure certain other creditors of Laird Waters, according to the schedule containing a list of their names and the amount respectively due them, allowing only fifty per cent. to be applied to a specific sum due from them, as indorsers of notes given to Comly, the complainant. The answer further admits their indebtedness to the complainant, who is a judgment and execution creditor to the amount of about $15,000. It is not alledged in the answer that the schedule creditors were either parties or privies to the bond, judgment or execution. The only question necessary to be considered and decided in this case, is the *Page 124 
right of the defendants as execution creditors; it is manifest and admitted, that there is no indebtedness except to one, that is Kelly, and that no more is due to him than $400. Can the execution be available to collect more than the debt due to the creditor, who is a party and privy; or can the excess beyond the debt due to the obligee be collected and legally held under the execution for the benefit of other creditors of the obligor, who are neither parties nor privies to the bond, judgment or execution. Unless their debts can be incorporated into the consideration of the bond, supposing the transaction to be without the other ingredient, which shows that the obligors apprehending insolvency, resorted to this as a mode of preferring their schedule creditors, it must necessarily follow that the persons named in the bond as obligees, and who at law stand on the record as the judgment and execution creditors, their debt being paid, could not hold the surplus as belonging to them. It would, by the process of law, supposing the sheriff to have paid the whole amount over into the hands of the defendants under the execution, have no greater force or effect than would take place, if the firm of Laird Waters had delivered over to McMakin, Burgess Kelly a similar amount in cash, directing them to pay certain creditors. In such a case, until the agent actually applies the fund there is no payment; and, if the agent or depository should misapply the fund, or waste or lose the same, it would not affect the right of the unpaid creditors, nor would the delivery by the debtor to his own selected and appointed agent prevent the creditors from suing or collecting their debts from the debtor; this being so, it must be admitted, that a fund thus placed in the hand of a stranger to be applied in the payment of debts, whether it be so done either by actual delivery by the debtor or by means of a bond, judgment and execution, which authorizes under legal proceedings the acquisition of the fund, the result is precisely the same, in all cases in which the creditors are not parties and privies to the transaction. With respect to the contract authorizing the agent or depository to collect and obtain possession of the fund, if the creditors be not parties and privies, I cannot perceive how it can be possible that their debts can constitute the consideration of the bond and judgment to McMakin, Burgess Kelly. The right of property still remains in the debtor, and he remains liable to all risk, and therefore, retains the control and power of revocation. If it is asked who, under such circumstances, is the cestui que trust, it can be none other than he who has the beneficial interest in the fund; hence under the circumstances I have stated, where the creditors *Page 125 
are neither parties nor privies, that person must be the owner of the fund who either delivered it over or authorized the person to whom it was not owing, to use legal process to obtain the possession. Being the person retaining the right of property, the legal possession of which is in another, he must be the person beneficially entitled and interested, and consequently the cestui que trust. That this is the true relation of the parties, is now settled by equity decisions relative to assignments to pay creditors not parties and privies, but enumerated in a schedule, or where they are named as parties, but not privies. In such cases the assignment is held to be voluntary, and that the creditor's debts constitute no part of the consideration; formerly it was considered they constituted a meritorious consideration. In a case before lord Keeper Bridgman, it was doubted whether a conveyance for payment of debts, made voluntarily and no creditors named in the deed, was revocable by the grantor, and the court with the assistance of the judges, was clearly of opinion that the deed was founded on a just and honest consideration, and the creditors were cestuis que trusts, and might compel the execution. (1 Ch. Rep. 30, Ch. Ca. 249.) But in a case before lord Eldon, where the creditors were scheduled to the deed, though neither parties nor privies to it, the instrument was held to be revocable. (3 Merr. 707; 3 Sim. 1.) And so it was held and determined in a more recent case, where the creditors were parties to the deed, but not privies to it. (3 Sim. 1; 2 M. K.
492; 4 Russ. 24.) And the principle upon which the modern doctrine proceeds is reasonable enough; for where, observed Sir L. Shadwell, a person without the privity of any one, without receiving consideration, and without notice to any creditor, makes a disposition as between himself and trustees for payment of debts, he is merely directing the mode in which his own property shall be applied for his own benefit, and the general creditors named in the schedule are merely persons named there for the purpose of showing how the trust property shall be applied. (3 Sim. 12.) The deed merely operates, said Sir J. Leech, as a power to the trustees, which is revocable by the debtor, and has the same effect as if the debtor had delivered money to an agent to pay his creditors, and before any payment made by the agent, or communication by him to the creditors, had recalled the money so delivered. (Acton vs. Woodgate, 2 M. K. 495.) And the present Lord Chancellor, when master of the rolls, in the case of Bill vs. Cureton, 2 M. K. 511, observed in Walwyn vs. Coutts, and Garrard
vs. Lord Lauderdale, the character of trustee and cestui que trust never existed between the creditor and the trustees, for the *Page 126 
settlor himself was the only cestui que trust, and therefore he was entitled to direct the application of the trust fund. The rule is adopted to promote the views and intentions of the parties. A man who, without any communication with his creditors, puts property into the hands of trustees, for the purpose of paying his debts, proposes only a benefit to himself, and not to his creditors: it would be a result most remote from the contemplation of the debtor, if it should be held that any creditor discovering the transaction, should be able to fasten upon the property and invest himself with the character of cestui que trust. The case of Garrard vs. Lord Lauderdale, involved the additional circumstance of a subsequent communication from the trustees to the creditors, of the contents of the trust deed; but the court was of opinion, as appears right upon principle, that the revocable nature of the instrument was not thereby destroyed. (3 Sim. 12.)
Considering the judgment and execution held by the present defendants as having accomplished all it was intended to effect, it could do no more than occasion a transmutation of the possession of the property, without affecting or changing the right of property in the surplus over and above the sum of $400, the amount due to one of the defendants; the surplus in their hands would necessarily belong to Waters Laird, until actually applied in payment. The question then recurs, what is to direct and control the payment? The answer alledges the parol agreement in connection with the schedule; but independent of the objection to the transaction, arising out of the circumstance of the other creditors not being parties or privies, it does appear to me impossible that the parol agreement, under the circumstances of this case, can be allowed to be established by parol, or to have any effect. Had it been in writing it could not avail, without expressly violating the law of this State relative to cases of this character, when the debtor apprehensive of utter ruin and insolvency, attempts either by parol or writing, to direct the appropriation of his property, not for the equal benefit of all his creditors, but for the avowed purpose of prejudicing the rights of one, and by the schedule giving a preference. If such a transaction as the present should be permitted to stand, or be sanctioned by a court of equity, it would altogether defeat the object intended to be effected by the law of this State, which declares "that if any person or persons in contemplation of insolvency or in contemplation of taking the benefit of the insolvent laws of this State, shall make an assignment of his, her or their estate or effects, for the benefit of his, her or their creditors, and in or by such assignment, either under the provisions thereof or otherwise, *Page 127 
shall prefer any one or more creditor or creditors to another or others, or shall in or by such assignment, secure or pay to any one or more creditor or creditors a greater proportion of his or her debt or demand than shall be secured or paid to each and every the creditor or creditors of the person or persons making such assignment; every such assignment, so preferring one or more creditor or creditors to another creditor or other creditors, shall be deemed fraudulent and absolutely void."
It is apparent this act was not made to prevent assignments, but to prevent persons in contemplation of insolvency either by assignment orotherwise, doing any act to prefer creditors, or through the intervention of a trust, so to appropriate their property as to effect an unequal distribution thereof.
The present case I do consider an attempt to evade the provisions and counteract the whole object and policy of the act; and, therefore, so far as the judgment and execution have been used for the purpose of obtaining the fund to be distributed as directed by the obligor, in a manner so as to give a preference, whether the directions be verbal or otherwise, in either case I consider the transaction within the provisions of the act, and pro tanto fraudulent and void. I was, therefore, of opinion, the defendants were not entitled to recover under their execution, a sum beyond the amount due to Kelly, one of the obligees, which by the bill is stated to be $400, and by the answer admitted as the only amount due; that sum with its interest and the costs of the judgment and execution excepted. With these views I ordered that a perpetual injunction should issue, enjoining and restraining the defendants from receiving any further or other sum under the said judgment or execution; and also enjoining and restraining the sheriff, in whose hands the said sum of money yet remains, from paying over to the said McMakin, Burgess Kelly, under the said execution fi. fa. to May term, 1837, and vend. exp. to May term, 1838, upon the said judgment No. 334, of the November term, 1836, any further or other sum than $400, and the interest and costs thereon accrued; and further ordered that defendant pay the costs.
By the Court.