# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FIRSTSTRING RESEARCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 2020-0332-KSJM |
| | ) | |
| JSS MEDICAL RESEARCH INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: February 15, 2021
Date Decided: May 28, 2021

Myron T. Steele, John A. Sensing, Jesse L. Noa, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Cory E. Manning, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina; Carrie A. Hanger, NELSON MULLINS RILEY & SCARBOROUGH LLP, Winston-Salem, North Carolina, Wesley T. Moran, NELSON MULLINS RILEY & SCARBOROUGH LLP, Myrtle Beach, South Carolina; *Counsel for Plaintiff FirstString Research, Inc.*

Steven L. Caponi, Matthew B. Goeller, K&L GATES LLP, Wilmington, Delaware; *Counsel for Defendant JSS Medical Research Inc.*

**McCORMICK, C.**

The defendant entered into an agreement to manage clinical studies for an investigational new drug developed by the plaintiff. One of the studies was delayed and ultimately terminated. The plaintiff filed this action for breach of contract alleging that the defendant mismanaged the study in ways that contributed to its overall failure. In addition to damages, the plaintiff seeks specific performance of the defendant's obligation to cooperate in winding down the study. After the plaintiffs filed this action, the defendant filed mirror-image breach of contract claims against the plaintiff in the Superior Court of the State of Delaware. In the Superior Court action, the defendant demanded a jury trial. The defendant has moved to transfer this action to the Superior Court, arguing that the plaintiff's request for specific performance is pretextual and insufficient to vest this court with subject matter jurisdiction. The defendant further argues that it has a constitutional right to a jury trial on its mirror-image claims such that a transfer of this action is necessary.

This decision holds that the complaint, objectively viewed, discloses a genuine need for equitable relief and that this court has jurisdiction over the entire action under the equitable clean-up doctrine. Further, because this court has jurisdiction to hear and decide the entirety of the plaintiff's complaint, the defendant does not have a right to a jury trial on its counterclaims. The defendant's motion to transfer is denied.

## I.      FACTUAL BACKGROUND

The facts are drawn from the Verified Complaint (the "Complaint")[1] and documents it incorporates by reference.

---

[1] C.A. No. 2020-0332-KSJM, Docket ("Dkt.") 1, Verified Compl., Filed on Behalf of Pl. FirstString Research, Inc. ("Compl.").

## A.    The Agreement

FirstString Research, Inc. ("FirstString" or "Plaintiff") is a biopharmaceutical company that "specializes in developing treatments for diseases associated with dysregulation of inflammatory processes and modulation of injury response."[2]  FirstString developed a drug called "Granexin Gel (ACT1 Peptide)" ("Granexin"), which received investigational new drug approval from the United States Food and Drug Administration.[3]

JSS Medical Research Inc. ("JSS" or "Defendant") is a contract research organization that conducts clinical research studies.[4]

By a Master Services Agreement dated February 19, 2018 (the "Agreement"),[5] FirstString retained JSS as a general contractor to "provide clinical research, data management and project management" for various clinical research studies.[6]

The Agreement stated that "[a]ll data developed relating to a study" is "the sole and exclusive property of [FirstString]."[7]  In the event of termination, the parties agreed that "JSS shall transfer to [FirstString] all Developments including any and all copies and/or derivatives hereof, made by JSS . . . as well as any writings, drawings, specifications, manuals or other printed material made by JSS . . . to the extent . . . not already transferred

---

[2] *Id.* ¶¶ 1, 6.

[3] *Id.* ¶ 7.

[4] *Id.* ¶¶ 2, 11.

[5] Compl. Ex. A ("Agreement").

[6] *Id.* ¶ 2; Compl. ¶ 13.

[7] Agreement ¶ 17.7.

prior to expiration or termination."[8] The parties further agreed "that termination of this [Agreement] and/or any Work Order in progress will require discussion and co-ordination to ensure subject safety, continuity/discontinuity of treatment, and compliance with local and/or national regulations."[9]

### B. The Work Order

The Agreement contemplated that JSS would perform numerous clinical studies and that the parties would execute a work order outlining specific project requirements and terms of compensation for each individual study.

On February 20, 2018, FirstString and JSS executed a work order (the "Work Order")[10] governing a "GAIT Study," which "focused on the safety and efficacy of Granexin for the treatment of diabetic foot ulcers."[11]

The Work Order incorporated the Agreement by reference, noting that "the [Agreement] and this Work Order with its Schedules shall be read, taken and construed as one and the same agreement."[12] It provided details of the GAIT Study's objectives and design, including the number and types of patients, the types of treatments, the desired endpoints, and the methods of statistical analysis to be used. It included a total study budget

---

[8] *Id.* ¶ 17.6.

[9] *Id.* ¶ 12.6.

[10] Compl. Ex. B ("Work Order").

[11] Compl. ¶ 12.

[12] Work Order ¶ 5.

3

of almost $6.5 million, a 35-month study timeline, and a payment plan entitling JSS to milestone payments during the study.

## C.    The Amendment

Two problems arose early in the GAIT Study.  The first problem was a delay due in part to insufficient patient recruitment.  Plaintiff alleges that JSS contributed to the delay by providing insufficient site monitoring and generally mismanaging the project.

The second problem involved nonpayment to third parties.  Pursuant to the Agreement and Work Order, FirstString had transferred funds to JSS throughout the GAIT Study to pay third-party clinical sites for their services.  FirstString, however, began to receive complaints from those clinical sites indicating that "JSS had failed to pay their invoices in a timely manner."[13]

In an effort to put the GAIT Study back on course and address nonpayment issues, the parties amended the Agreement and Work Order on April 9, 2019 (the "Amendment").[14]

The Amendment removed FirstString's obligation to pay JSS for "all amounts owed for the Services performed by it" in the event the Agreement or any Work Order "is terminated for any reason."[15]  It further added $500,000 in "additional start-up funds" to

---

[13] Compl. ¶ 24.

[14] Compl. Ex. D ("Amendment").

[15] *Id.* ¶ 1.

the GAIT Study's budget, payable upon execution of the Amendment.[16] Lastly, it obligated JSS to pay third-party vendors in a timely manner and gave FirstString the right to "terminate and transfer" the GAIT Study to another contract research organization if JSS missed certain milestones specified in the Amendment.[17]

### D.    The Termination

The Amendment did not put the GAIT Study back on course. According to Plaintiff, JSS continued to miss deadlines and FirstString continued to receive complaints of nonpayment by JSS from the GAIT Study's third-party clinical sites. Shortly after FirstString closed patient enrollment in February 2020, FirstString asked JSS for a revised budget proposal detailing the cost of "all study termination and close out activities."[18] The parties, however, were unable to agree to a revised budget, and their relationship began to devolve. On April 16, 2020, JSS threatened to suspend all activity on the GAIT Study. On April 20, FirstString threatened to terminate "the North American portion of the Work Order."[19] On April 27, FirstString notified JSS that it was terminating the GAIT Study and the Agreement, Work Order, and Amendment. FirstString further demanded that JSS turn over access to electronic records from the GAIT Study.

---

[16] *Id.* ¶ 2. The Complaint states that "FirstString . . . agreed to pay JSS another $500,000 in additional start-up funds," but it does not say whether FirstString actually made the payment. Compl. ¶ 28.

[17] Amendment ¶¶ 5, 8.

[18] Compl. ¶ 35.

[19] *Id.* ¶ 39.

To date, JSS has not turned over those records or assisted FirstString in winding down the study per its obligations under the Agreement, the Work Order, and the Amendment.

### E.     This Action

FirstString filed this action on May 5, 2020. The Complaint asserts three counts: Count I for breach of contract; Count II for replevin; and Count III for conversion. In addition to damages and return of its property, FirstString seeks "a permanent injunction ordering JSS to [c]omply with its obligations under the [Agreement], Work Order, and Amendment."[20] FirstString asks that the court order JSS to "assist FirstString in properly winding down the GAIT Study in a manner that protects the health and safety of the study subjects . . . [and] which includes but is not limited to giving FirstString complete and unfettered access to . . . study data and related study documents."[21] FirstString also seeks an accounting of the funds earmarked for third-party clinical sites.

### F.     The Superior Court Action

JSS sued FirstString on May 29, 2020, in the United States District Court for the District of Delaware.[22] After realizing that the Agreement provides for venue only in courts

---

[20] *Id*. at Prayer for Relief ¶ A.

[21] *Id*. at Prayer for Relief ¶¶ A(i)–(iii). FirstString also seeks "a judgment in favor of FirstString on all Counts" and an award of "its damages, costs, pre- and post-judgment interest, and reasonable attorneys' fees." *Id.* at Prayer for Relief ¶¶ B–C.

[22] Dkt. 16, FirstString Research, Inc.'s Answering Br. in Opp'n to Def.'s Mot. to Transfer, Filed on Behalf of Pl. FirstString Research, Inc. ("FirstString Answering Br.") Ex. C. JSS filed in the District Court based on a misreading of the forum selection provision of the Agreement as providing for venue in courts *in* the state of Delaware, not courts *of* the state of Delaware. *See* Dkt. 19, JSS Medical Research Inc.'s Reply Br. in Supp. of Mot. to

"*of* the state of Delaware," JSS voluntarily dismissed the federal action and filed a new action against FirstString in the Superior Court of the State of Delaware on June 17, 2020 (the "Superior Court Action").[23]

In the Superior Court Action, JSS contends that FirstString failed to make necessary payments and improperly interfered with JSS's ability to conduct the GAIT Study, resulting in the study's failure and tarnishing JSS's relationships with its third-party clinical site partners.[24]

JSS asserts three counts against FirstString: Count I for breach of contract; Count II for tortious interference; and Count III for tortious interference with contractual relations. JSS seeks damages and has demanded a "trial by jury on all issues so triable."[25]

### G. The Motion to Transfer

On August 10, 2020, JSS moved to transfer this action to Superior Court pursuant to 10 *Del. C.* § 1902 or, in the alternative, dismiss for lack of subject matter jurisdiction pursuant to Court of Chancery Rule 12(b)(1).[26] As a further alternative, JSS moves to transfer to the Superior Court all aspects of this case except for FirstString's requests for

---

Transfer for Lack of Jurisdiction ("JSS Reply Br.") at 10 ("JSS inadvertently misquoted the language from the agreement. This typographical error was a mistake.").

[23] FirstString Answering Br. Ex. B ("JSS Compl.").

[24] *See id.* ¶¶ 37, 40, 43–45.

[25] *Id.* ¶ 68.

[26] Dkt. 9, Mot. to Transfer for Lack of Jurisdiction; *see* Dkt. 14, JSS Medical Research Inc.'s Opening Br. in Supp. of Mot. to Transfer for Lack of Jurisdiction ("JSS Opening Br.") at 17.

equitable relief, which JSS contends could be stayed pending resolution of the legal and factual disputes.

The parties fully briefed JSS's motion, and the court heard oral argument on JSS's motion to transfer on October 28, 2020.[27] The court requested supplemental briefing on November 17, 2020,[28] which the parties completed on February 15, 2021.[29]

## II. LEGAL ANALYSIS

This decision first evaluates whether FirstString's request for specific performance is sufficient to invoke this court's subject matter jurisdiction. It then addresses whether there is a basis for applying the clean-up doctrine to exercise jurisdiction over the entirety of the action. It last addresses whether JSS's demand for a jury trial in the Superior Court Action affects the analysis.

### A. The Court Has Subject Matter Jurisdiction Over FirstString's Request for Specific Performance.

"The Court of Chancery is a court of 'limited jurisdiction'; it acquires subject matter jurisdiction 'only when (1) the complaint states a claim for relief that is equitable in

---

[27] *See* FirstString Answering Br.; JSS Reply Br.; Dkt. 25, Oct. 28. 2020 Tr. of the Oral Arg. via Zoom on Def.'s Mot. to Transfer for Lack of Jurisdiction.

[28] Dkt. 24, Letter to Counsel from the Hon. Kathaleen St. J. McCormick Regarding Suppl. Briefing.

[29] *See* Dkt. 28, FirstString Research, Inc.'s Suppl. Br. in Opp'n to JSS Medical Research, Inc.'s Mot. to Transfer, Filed on Behalf of FirstString Research, Inc. ("FirstString Opening Suppl. Br."); Dkt. 29, JSS Medical Research Inc.'s Opening Suppl. Br. in Supp. of Mot. to Transfer for Lack of Jurisdiction ("JSS Opening Suppl. Br."); Dkt. 32, FirstString Research, Inc.'s Answering Br. in Opp'n to JSS Medical Research, Inc.'s Suppl. Br. in Supp. of Its Mot. to Transfer ("FirstString Answering Suppl. Br."); Dkt. 33, Answering Br. in Opp'n to FirstString Research, Inc.'s Suppl. Br. ("JSS Answering Suppl. Br.").

8

character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute.'"[30] Plaintiff bears the burden of establishing a basis for subject matter jurisdiction "as of the time the complaint is filed."[31] Jurisdiction should remain "unaffected by post-complaint developments."[32]

In determining jurisdiction, mere incantation of equitable relief is insufficient. This court "will go behind the 'façade of prayers' to determine the 'true reason' for which the plaintiff has brought suit."[33] The court conducts a "realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate."[34]

---

[30] *Vama F.Z. Co. v. WS02, Inc.*, 2021 WL 1174690, at *2 (Del. Ch. Mar. 29, 2021) (quoting *Perlman v. Vox Media, Inc.* 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019) *aff'd*, 2021 WL 1042985 (Del. Mar. 18, 2021) (TABLE)); *see also* 10 *Del. C.* § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity."); *id.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.").

[31] *Wal-Mart Stores, Inc. v. AIG Ins. Co.*, 2006 WL 3742596, at *3 (Del. Ch. Dec. 12, 2006) (quoting *Giordano v. Marta*, 1999 WL 350493, at *2 (Del. Ch. Apr. 28, 1999)); *see Lewis v. AimCo Props., L.P.*, 2015 WL 557995, at *2 (Del. Ch. Feb. 10, 2015) ("The plaintiff 'bears the burden of establishing this Court's jurisdiction . . . .'" (quoting *Yancey v. Nat'l Tr. Co.*, 1993 WL 155492, at *6 (Del. Ch. May 7, 1993)).

[32] *Wal-Mart*, 2006 WL 3742596, at *3.

[33] *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991) (quoting *Strickler v. Sussex Life Care Assoc.*, 541 A.2d 587 (Del. 1987)).

[34] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)) (holding that this court "must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim . . . in order to determine whether a legal remedy is available and fully adequate").

The only claims asserted by FirstString are common law contract or tort claims that are legal in nature and do not fall under any statute vesting this court with jurisdiction.[35] To establish subject matter jurisdiction, FirstString relies on its request for equitable relief in the form of specific performance.[36]

"Although specific performance is an equitable remedy upon which equity jurisdiction might be predicated, that is true only if the complaint, objectively viewed, discloses a genuine need for such equitable relief."[37]

FirstString discloses a genuine need for specific performance. FirstString contracted with JSS to conduct the GAIT Study on its behalf. Part of JSS's role was to serve as point of contact with the clinical sites for the GAIT Study. JSS agreed that termination of any Work Order in progress would "require discussion and co-ordination to ensure subject safety, continuity/discontinuity of treatment, and compliance with local

---

[35] *See Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911–12 (Del. 1989) (noting that a party is "entitled to request a jury trial" in "an action known to the common law"); *see also In re Markel*, 254 A.2d 236, 239 (Del. 1969) (holding that replevin is a legal action); *Helix Generation LLC v. Transcanada Facility USA*, 2019 WL 2068659, at *2 (Del. Ch. May 10, 2019) (holding that claims for breach of contract and tort are legal claims); *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *11 (Del. Super. Oct. 25, 2018) (holding that conversion is an intentional tort for which a legal remedy exists).

[36] FirstString also seeks "injunctive relief" but treats that request as functionally equivalent to its request for specific performance. *See* FirstString Answering Br. at 16 (requesting "specific performance and/or mandatory injunctive relief"). FirstString further seeks an equitable accounting. Because FirstString's prayer for specific performance is sufficient to invoke the court's jurisdiction, this decision does not address whether the request for equitable accounting independently suffices.

[37] *Candlewood*, 859 A.2d at 997.

10

and/or national regulations."[38]  At the time FirstString filed this action, JSS had not turned over the GAIT Study records or coordinated with FirstString in winding down the study. FirstString seeks specific performance "to require JSS to cooperate and assist in the winddown of the GAIT Study."[39]  Objectively viewed, the complaint discloses a genuine need for equitable relief.

JSS responds that FirstString's legal claim for replevin supplies an adequate remedy at law concerning FirstString's rights to the GAIT Study data,[40] but this argument ignores JSS's coordination obligation that FirstString seeks to enforce.  It is reasonably conceivable that merely returning the GAIT Study data will not suffice to wind down the study and transition the third-party relationships that JSS managed under the Agreement.

For these reasons, FirstString has adequately pled a claim for equitable relief sufficient to invoke this court's jurisdiction.

### B.     Exercising Ancillary Jurisdiction Over the Entire Complaint Is Appropriate Under the Clean-Up Doctrine.

The analysis turns to whether the court should exercise ancillary jurisdiction under the clean-up doctrine over Plaintiff's legal claims and requests for relief.

"Fundamentally, once a right to relief in Chancery has been determined to exist, the powers of the Court are broad and the means flexible to shape and adjust the precise relief to be granted so as to enforce particular rights and liabilities legitimately connected with

---

[38] Agreement ¶ 12.6.

[39] FirstString Answering Br. at 17.

[40] *See* JSS Opening Br. at 13–14.

11

the subject matter of the action."[41]   The "clean-up doctrine" gives this court ancillary jurisdiction "to resolve purely legal causes of action that are before it as part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid piecemeal litigation."[42]

This court has described the policies underlying the clean-up doctrine as follows:

> Some of the reasons why equity, once having acquired jurisdiction over part of a controversy, will, in the Court's discretion, continue to exercise jurisdiction over the entire controversy, even over those portions where there is an adequate remedy at law are:  to resolve a factual issue which must be determined in the proceedings; to avoid multiplicity of suits; to promote judicial efficiency; to do full justice; to avoid great expense; to afford complete relief in one action; and to overcome insufficient modes of procedure at law.[43]

This court applies several factors in determining whether it will entertain ancillary legal claims.  Those factors are "whether retention of the claims will:  1) resolve a factual issue which must be determined in the proceedings; 2) avoid a multiplicity of suits; 3) promote judicial efficiency; 4) do full justice; 5) avoid great expense; 6) afford complete relief in one action; or 7) overcome insufficient modes of procedure at law."[44]

---

[41] *Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576, 580 (Del. 1964) (citing 1 John N. Pomeroy, *A Treatise on Equity Jurisprudence* § 115 (5th ed. 1941) [hereinafter Pomeroy]).

[42] *Kraft*, 145 A.3d at 974.

[43] *Getty Ref. & Mktg. Co. v. Park Oil, Inc*, 385 A.2d 147, 150 (Del. Ch. 1978) (citing *Mackenzie Oil Co. v. Omar Oil & Gas Co.*, 120 A. 852 (Del. Ch. 1923); Pomeroy § 175).

[44] *Acierno v. Goldstein*, 2004 WL 1488673, at *5 (Del. Ch. June 25, 2004) (citing *Clark v. Teeven Hldg. Co.*, 625 A.2d 869, 882 (Del. Ch. 1992)).

These factors weigh in favor of exercising ancillary jurisdiction over Plaintiff's legal claims under the cleanup doctrine. The basis of Plaintiff's request for specific performance depends on the factual finding that JSS breached the Agreement. Because the Superior Court is incapable of ordering specific performance, this court is uniquely situated to do full justice and afford complete relief. Exercising this court's ancillary jurisdiction will avoid a multiplicity of suits and potentially inconsistent factual findings, thereby promoting judicial efficiency and avoiding litigation expenses. As the parties agree, this matter is best resolved by one court and should not proceed in piecemeal fashion.[45]

### C. JSS's Demand for a Jury Trial in the Superior Court Action Does Not Affect This Court's Subject Matter Jurisdiction.

JSS acknowledges that the factors for applying the clean-up doctrine favor denying its motion to transfer. JSS contends, however, that its "constitutional right to a jury regarding FirstString's legal claims . . . trumps the efficiency concerns underlying the clean-up doctrine."[46] In advancing this argument, JSS effectively pits its rights to a jury trial against the policies underlying the clean-up doctrine, giving rise to the following question: To what degree can this court's exercise of ancillary jurisdiction abrogate a litigant's right to a trial by jury in a sister court?

The short answer, expressed in this court's 2004 decision in *Acierno v. Goldstein*, is that "a litigant is '*not* entitled to a Superior Court jury trial of claims that are cognizable

---

[45] *See* FirstString Answering Br. at 10; JSS Opening Br. at 1–2.

[46] JSS Opening Br. at 16.

in this Court.'"[47]  In *Acierno*, the defendant argued that the exercise of ancillary jurisdiction over its counterclaims would "violate his constitutional right to a jury trial" in civil actions at law.[48]  The court rejected this argument, describing it as calling for "a seachange to . . . equity jurisprudence" and observing that "Delaware law has long recognized the Court of Chancery's ability to hear legal claims, which, if brought alone, could be tried to a jury in Superior Court."[49]

A longer answer would be good fodder for a lengthy lecture on the rich history of a right to jury trial and the scope of equitable jurisdiction under Delaware law.  What follows

---

[47] 2004 WL 1488673, at *5 (quoting *Pepsi-Cola Bottling Co. of Salisbury, Md. v. Handy*, 2000 WL 364199 at *7 (Del. Ch. Mar. 15, 2000)); *accord Getty*, 385 A.2d at 150 ("This Court has also clearly indicated that, once it has jurisdiction over a matter, it is discretionary whether it will determine a factual issue without a jury if the issue is one which would ordinarily be tried by jury at law." (citing *Mackenzie Oil*, 120 A. 852)).

[48] *Acierno*, 2004 WL 1488673, at *5.

[49] *Id.*; *see also Park Oil, Inc. v. Getty Ref. & Mktg. Co.*, 407 A.2d 533, 535 (Del. 1979) (holding, in a slightly distinguishable context, that "[t]he right to a jury trial . . . applies to an action at law; it does not apply in an equity suit," and rejecting the claim that the Court of Chancery's grant of summary judgment abrogated appellant's right to a jury trial); *Nichols v. Lewis*, 2007 WL 1584622, at *1 (Del. Ch. May 24, 2007) (exercising discretion to not apply the clean-up doctrine, noting that "I do *not* base my decision on a lack of power on the part of this court to try the remaining claim without a jury" (emphasis added)); Eric J. Hamilton, *Federalism and the State Civil Jury Rights*, 65 Stan. L. Rev. 851, 856 (2013) [hereinafter Hamilton] (discussing courts of law and equity and explaining that "parties only had a right to a jury in courts of law" and that "[l]itigating issues in both courts would be expensive, time consuming, and problematic, so when the plaintiff desired both legal and equitable relief, the chancery court (the court of equity) could decide legal issues incidental to the equitable issues properly brought before the court under the equitable cleanup doctrine . . . [and] parties could lose the right to a jury trial in some legal actions."); Pomeroy § 116 ("There are, however, classes of equitable suits in which the issues of fact upon which the relief depends, are so intimately connected with the relief itself that their decision is plainly beyond the competence of a jury, and must of necessity be left to the court or judge.").

is less of a lengthy lecture and more a pointed response to historical arguments raised by the parties.

Article I, Section 4 of Delaware's second Constitution, adopted in 1792, guarantees its citizens the right to trial by jury "as heretofore,"[50] and Delaware's highest appellate court has interpreted this language to convey a right to trial by jury equivalent to that right as it existed at common law in 1776.[51]  Thus, the first step in the analysis focuses on one snapshot in time—1776.

The predominant view is that, with some exceptions not applicable here,[52] the clean-up doctrine took precedence over any right to a jury trial on civil claims as of 1776.  For

---

[50] Del. Const. of 1792, art. I, § 4 (1792); *McCool v. Gehret*, 657 A.2d 269, 282 (Del. 1995); *Claudio v. State*, 585 A.2d 1278, 1298 (Del. 1991).  The right to a jury trial in civil actions in state courts is a matter of state law.  *See Walker v. Sauvinet*, 92 U.S. 90, 92–93 (1875) (holding that the Seventh Amendment to the United States Constitution is not applied to the states through the Fourteenth Amendment).  *See generally* Hamilton at 860–61 (discussing the ratification and history of the Seventh Amendment).

[51] *Claudio*, 585 A.2d at 1297 (holding in the context of a criminal proceeding that this provision "guarantee[s] the right to trial by jury as it existed at common law"); *see also* Randy J. Holland, *The Delaware State Constitution, A Reference Guide* 30–33 (2002) [hereinafter Holland] ("In construing [Article I, Section 4] regarding the right to a civil jury trial, the Delaware courts also apply historic principles of common law.").

[52] As this court explained in *Preston Hollow Capital LLC v. Nuveen LLC*,

> Under traditional principles, equity declined to exercise jurisdiction over such [defamation] cases, which gave rise to the maxim that "equity will not enjoin a libel."  The reasons given for this no-injunction rule vary and have shifted over time. The original intent behind the rule was to give jurors, rather than judges, the ability to determine whether statements were defamatory.  In other words, a defendant, if she is to be sanctioned *solely for her speech*, is entitled to have that speech reviewed by her peers.  That rationale remains persuasive in Delaware, given the vitality here of the split between equity

15

this proposition, FirstString relies in part on Eric Hamilton's article *Federalism and the State Civil Jury Rights*, which summarizes the state of the common law as follows:

> [T]he . . . court of equity . . .  could decide legal issues incidental to the equitable issues properly brought before the court under the equitable cleanup doctrine.  The chancellor would not empanel a jury, but rather would decide all issues in the dispute and decree complete relief.  Thus, parties could lose the right to a jury trial in some legal actions.[53]

As reflected in the above passage, the cleanup doctrine effectively trumped any right to a jury trial at common law.

For a contrary historical depiction, JSS relies primarily on Harold Chesnin and Geoffrey C. Hazard, Jr.'s article *Chancery Procedure and the Seventh Amendment:  Jury*

---

and law. This Court has jurisdiction over matters arising in, or to be remedied by, equity, as well as certain issues for which jurisdiction has been statutorily conferred by the legislature. Where equity has jurisdiction over legal claims because equitable relief is sought (or as vested by statute), it is the judge, not a jury, who makes factual findings. As a result, factual determinations for which a defendant could traditionally insist on a jury at law are, in Chancery, reserved to the Court. While a defendant in Chancery may request severance and transfer of legal issues to the Superior Court for purposes of determination of fact by a jury, such requests are subject to the discretion of the presiding judge.

216 A.3d 1, 11–13 (Del. Ch. 2019) (cleaned up) (citing and discussing *Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102 (Del. Ch. 2017)).

[53] Hamilton at 857; *see also* 1 John N. Pomeroy, *A Treatise on Equity Jurisprudence* § 182 (2nd ed. 1899) (stating that "[t]he courts of law have no power, by their own judicial legislation, and without any statutory interference, to abolish, curtail, or modify the jurisdiction which has once been acquired by equity"); Holland at 33 (explaining that "[t]he common law right to trial by jury exists for actions at law *but not for actions brought in equity*" (emphasis added)).

*Trial of Issues in Equity Cases Before 1791.*[54]  Chesnin and Hazard argue that the practice

in the English Court of Chancery as to the use of jury trials in equity was "in transition" as

of the late 1700s.[55]  They report that if a party raised both legal and equitable issues in late

1776, the practice of the court of equity was to refer the legal issues to a court of law.[56]

Other scholars have similarly observed that "[w]hile the 16th century Chancery encouraged

the submission of cases to arbitration, referral to common law trial became the Chancery's

regular device for delegation of factual disputes during the 17th and 18th centuries."[57]

Although Chesnin and Hazard draw their conclusion for the purpose of informing

the scope of the Seventh Amendment in federal proceedings, JSS fairly reasons that the

conclusion extends to the analysis at hand.  To JSS, if the right to a jury trial in English

---

[54] *See* Harold Chesnin and Geoffrey C. Hazard, Jr., *Chancery Procedure and the Seventh Amendment:  Jury Trial of Issues in Equity Cases Before 1791*, 83 Yale L. J. 999 (1974) [hereinafter Chesnin & Hazard].

[55] *Id.* at 999.

[56] *See id.* at 1000.  Courts of equity employed a number of similar procedures to resolve those legal claims.  The most standard procedure in England was the "'feigned issue' procedure," where the chancellor referred for resolution disputed issues of fact to the law courts for a jury trial.  *See* C. Christopher Brown, *The Law/Equity Dichotomy in Maryland*, 39 Md. L. Rev. 427, 458–59 (1980) [hereinafter Brown].  The feigned issue procedure consisted of a trial by jury—in a court of common law—of questions of fact in dispute in a court of equity.  Chesnin & Hazard at 1007.  Alternatively, a court of equity would stay its proceedings while the parties resolved factual issues in a court of law.  Brown at 459 n.195.  "Referral to common law trial was therefore equity's regular device for resolution of significant factual disputes in 17th and 18th century England."  *Id.* at 460.

[57] John H. Langbein, *Fact Finding in the English Court of Chancery:  A Rebuttal*, 83 Yale L. J. 1620, 1629 (1974) [hereinafter Langbein]; *see also* 2 Sir William Blackstone, *Commentaries on the Laws of England* 350 (19th ed. 1900) ("[I]f a question of mere law arises in the course of a cause, . . . . it is the practice of this court to refer it to the opinion of the judges of the court of king's bench or common pleas, upon a case stated for that purpose . . . .").

common law in 1776 extended to matters in equity, then so too does Delaware's constitutionally enshrined right to a jury trial.

There are a few problems with the conclusion that JSS advances based on Chesnin and Hazard's work. The first stems from the self-qualified conclusions drawn by the authors, who state that their position "is not the only possible analysis . . . and perhaps not the soundest one."[58]

The second is articulated by John H. Langbein in his rebuttal to Chesnin and Hazard's article. Langbein compellingly argues that courts of equity referred matters to a jury out of concerns for judicial efficiency only, explaining that "Chancery delegated cases not because it lacked the power to decide them, but because it lacked the means."[59] According to Langbein, those referrals were largely discretionary, and the jury verdicts were advisory and nonbinding on the court.[60]

---

[58] *Id.* at 1020.

[59] Langbein at 1630; *see also* A. Leo Levin, *Equitable Clean-Up and the Jury: A Suggested Orientation*, 100 U. Pa. L. Rev. 320, 326 (1951) ("There was good reason for the chancellor's interest in trial by jury. His own procedure for resolution of issues of fact was woefully inadequate.").

[60] Langbein at 1629–30. To counsel's credit, JSS acknowledged in briefing that the eighteenth-century practice of referring matters in equity to jury trials was largely discretionary. *See* JSS Opening Br. at 7–9. Langbein's observations also square with a line of Delaware cases dating back to the early 1800s holding that factual disputes arising in equitable matters can "be tried by a jury at law" but that such jury trials are "not a matter of right, [and] fall[] completely within the sound discretion of the Court." *Saunders v. Saunders*, 71 A.2d 258, 261 (Del. 1950) (collecting cases); *see also* 10 *Del. C.* § 369 (codifying *Saunders*, providing that "[w]hen matters of fact, proper to be tried by a jury, arise in any cause depending in Chancery, the Court of Chancery *may* order such facts to trial by issues at the Bar of the Superior Court" (emphasis added)); *Sparks v. Farmers' Bank*, 3 Del. Ch. 225, 230 (1868) (referring to the issuance of factual questions to a jury as "one made to the sound discretion of the Court"). This line of cases is consistent with

Perhaps most fatal, the conclusions that JSS advances seem to ignore Delaware's unique common law since 1776 as compared to that of other states and federal courts. In the mid-nineteenth century, most states were merging their courts of law and equity. Post-merger, many state courts grappled with what one scholar has called the "intertwined issue problem"—the question of whether litigants were entitled to a jury trial on facts common to legal and equitable issues. The majority of state courts considering this issue initially

---

multiple other cases throughout the late nineteenth and early twentieth centuries upholding the scope of equitable jurisdiction over legal issues. *See Waters v. Comly*, 3 Del. 117, 130 (1840) (affirming this court's refusal to refer certain factual matters for trial by jury); *Cumins v. Cumins*, 31 A. 816, 819 (Del. Super. 1895) ("Under our system of jurisprudence, questions of fact, of the gravest moment, and embracing the largest interests, are heard and determined without a jury. We need not cite instances. They are numerous, and must be familiar to every lawyer."); *Virden v. Bd. of Pilot Comm'rs*, 67 A. 975, 982 (Del. Ch. 1896) (exercising the clean-up doctrine despite an adequate statutory remedy at law, noting the "familiar rule of equity that, where the court has jurisdiction of one branch of a case, it will, for the purpose of avoiding multiplicity of actions, assume jurisdiction of the whole subject, including such matters as would not, if standing alone, have been within the jurisdiction of the court"); *Mackenzie Oil*, 120 A. at 855 ("The Chancellor may seek the judgment of a jury on a question of fact proper to be tried by a jury by framing an issue to be tried at the bar of the Superior Court. This procedure, however, has *always been regarded as discretionary*." (emphasis added)); *Glanding v. Indus. Tr. Co.*, 45 A.2d 553, 559 (Del. 1945) (preserving this court's equity jurisdiction in the face of statutes creating legal causes of action, noting that equitable jurisdiction remains "unless the statute shows a clear and certain intent that the equitable jurisdiction is no longer to be exercised under the matters within the scope of the statute"); *Saunders*, 71 A.2d at 261–62 ("Once jurisdiction of the subject matter has been properly ascertained equity will proceed to determine all facts essential to a decree, except the determination of facts necessary to adjudicate the legal title to land."); *Getty*, 385 A.2d at 151 (holding that a "jury trial in Chancery is advisory only" and rejecting the "old procedure of framing of issues by the Court of Chancery for jury trial" as "probably outmoded"); *see also* William T. Quillen, Constitutional Equity and the Innovative Tradition, 56 L. & Contemp. Probs. 29, 50 (1993) ("Delaware law seems clear that, once equity jurisdiction has attached, the Court of Chancery has jurisdiction to enter a purely legal remedy and to enter judgment on a sole surviving purely legal claim.").

19

resolved that litigants were not entitled to a jury trial on intertwined issues, an approach that has been referred to as the "traditional rule."[61]

Federal courts merged law and equity in 1938, and federal decisions thereafter prompted a shift away from the traditional rule in merged jurisdictions. In 1959, the U.S. Supreme Court held in *Beacon Theatres, Inc. v. Westover* that the Seventh Amendment requires a jury trial on any legal issues, including intertwined issues.[62] Three justices dissented, observing that the outcome was a "marked departure from long-settled principles" because it "disregarded the historic relationship between equity and law."[63] Although federal common law on civil litigants' right to a jury trial does not bind state courts, *Beacon* proved influential and precipitated a trend toward the federal approach.[64] Today, at least twenty-two states follow the federal rule while only eighteen states follow a variant of the traditional rule.[65]

Throughout the post-*Beacon* movement toward the federal approach, Delaware stayed stalwartly in the traditionalist camp, first bucking the mid-nineteenth century trend of merging courts of law and equity,[66] and then maintaining the viability of the clean-up

---

[61] Hamilton at 862–63.

[62] 359 U.S. 500, 517–18 (1959).

[63] Hamilton at 863.

[64] *See id.* at 864–68.

[65] *Id.* at 868.

[66] *See generally* William T. Quillen and Michael Hanrahan, *A Short History of the Court of Chancery* (1993), https://courts.delaware.gov/chancery/history.aspx (tracing the history of the Court of Chancery from 1792 to 1992).

doctrine over a right to jury trial as to intertwined issues.[67] By 2004, this court had "long recognized" the answer to the precise question presented in this action, which *Acierno* addressed as a matter of black letter law.[68] Today, the law is settled, and the outer boundary of this court's equitable jurisdiction also delineates the scope of a right to trial by jury in civil actions with limited exceptions not applicable here.[69]

None of this is to say that access to a jury trial is a trivial matter to be ignored. To the contrary, such access is an important factor to consider when determining whether this court will exercise its discretion to decide the whole controversy. It is also the one of the factors motivating this court's willingness to "go behind the 'façade of prayers' to determine the 'true reason' for which the plaintiff has brought suit."[70]

---

[67] *See Acierno*, 2004 WL 1488673, at *5 (applying the cleanup doctrine to exercise ancillary jurisdiction and reiterating that "a litigant is '*not* entitled to a Superior Court jury trial of claims that are cognizable in this Court'" (quoting *Pepsi-Cola*, 2000 WL 364199 at *7); *Park Oil,* 407 A.2d at 535 (holding that "[t]he right to a jury trial . . . applies to an action at law; it does not apply in an equity suit"); *see also* Hamilton at 891 ("Delaware has not merged law and equity and has rejected attempts to abandon the equitable cleanup doctrine. Delaware's Court of Chancery is permitted to determine a legal issue, even where the injunctive issues that gave the suit chancery jurisdiction became moot."); *Glanding*, 45 A.2d at 555 (observing that the Court of Chancery "inherited its equity jurisdiction from the English Courts; and in its organization and proceedings, especially in matters of pleading, practice and evidence, the Court of Chancery of the State of Delaware has adhered more closely to the English Court of Chancery and to English precedents than those of any of her sister States" (internal quotation marks omitted)).

[68] 2004 WL 1488673, at *5 (noting that "Delaware law has *long recognized* the Court of Chancery's ability to hear legal claims, which, if brought alone, could be tried to a jury in Superior Court" (emphasis added)).

[69] *See supra* note 52 (discussing the defamation exception).

[70] *See supra* note 33 and accompanying text.

21

In this case, FirstString's request for specific performance is a genuine appeal to equity. It is therefore within the court's discretion to exercise its ancillary jurisdiction over the remainder of FirstString's claims under the cleanup doctrine. For these reasons, it is appropriate for this case to remain in this court.

## III. CONCLUSION

For the foregoing reasons, JSS's motion to transfer is DENIED.