tween that case and this, is that there the alleged waiver was not acted upon, had no influence upon the vendor or his subsequent purchaser and was therefore, as the Court say, without consideration. There was not in that case anything to raise an equity in favor of the second pur-chaser, as there is here in favor of Terry, but on the contrary the second sale in that case was a gross fraud and so treated by the Court.

Looking at all the circumstances of the case, I think that Maxfield by his voluntary consent to this sale has lost, as against the purchaser, whatever equity he could have had, under the agreement with Cleaver, whether the agreement be considered a contract of sale, or a declaration of trust.

I cannot therefore decree a specific performance of this agreement, and must dismiss the bill with costs.

---

## EDWARD TATNALL,

### *vs.*

### SERECK F. SHALLCROSS, CHRISTIAN FEBIGER, SAMUEL H. DERRICK, AMOS SHARPLESS, JR., GEORGE JACKSON, FERDINAND JANVIER, LEVI RUTH, WILLIAM R. BRIGHT, DAVID GRAVES, WILLIAM N. WILSON and ALEXANDER DEAKYNE.

*New Castle, Sept. T. 1873.*

Where a public road crossed a mill-dam which had been repaired at the joint expense of the county and the proprietor, there being no evidence how the road was originally established, but an act of General Assembly having made it a charge on the county, and the mill-dam having broken away, and the Levy Court was proceeding to reconstruct the road upon piles, so that it would be available for the purposes of a road and not as a dam, an injunction was awarded to restrain the proposed action of the Levy Court.

PETITION FOR INJUNCTION. — The petitioner alleged that he was seized of a certain mill property in Pencader Hundred, including water power, mill, dam and flood gates commonly known as "McCrone's Mill," which were conveyed to him January 4, 1869, by James A. Kendall ; that he, and those under whom he claims title, and had open, notorious. adverse, uninterrupted and contionous possession of the premises for upwards of sixty years, and that the dam and flood-gates connected with the mills were used and occupied exclusively for the purposes of the mills by the petitioner's predecessors long before the road, hereafter mentioned, was laid out and opened. During the said occupation, and about the year 1860, a public road was laid out and opened through the premises and over the said mill-dam and flood-gates along their entire length, but there was no compensation fixed and paid therefor according to law ; but the road was laid out and opened subject and subordinate to the petitioner's and his predecessors' rights in the mill property and premises.   After the road was laid out and opened over the dam and flood gates, the authorities of the hundred expended $300 for the repair of the mill-dam and the flood-gates, and George McCrone, a former owner of the premises, expended the sum of $1,500 upon said repairs, and the road continued to be used by the public until it badly needed further repairs. James A. Kendall, then the owner of the said premises, applied to the Levy Court of New Castle County, and requested them to repair the road and dam, subject and having respect to his rights therein, and the members of the Levy Court declared that they had no rights whatever in the said dam or gate or water-power, and no authority to expend money thereon for the repairs of the said road unless authorized by the General Assembly of the State, and they requested said Kendall to ask the General Assembly at its then next session, to pass a law making the road over the dam a county charge, and requiring the Levy Court

of New Castle County to keep it in good repair and safe for public travel.

By an act of the General Assembly, passed March 15, 1865, it was enacted as follows :—

"That so much of the public road leading from the "New Castle and Frenchtown Turnpike Road, passing "through the Eastern part of Pencader Hundred to the "Elkton and Christiana Turnpike Road, as crosses over "the mill-dam known as "McCrone's Mill," be, from and "after the passage of this act, a county charge, and the "Levy Court of the said County of New Castle are here-"by required to keep said portion of said road in good "repair and safe for the public travel at the expense of "the said County."*

Subsequently to the passage of this act, the Commissioners of the Levy Court, and the said Levy Court expended money in repairing and making safe for public travel the road and dam and flood-gates from and upon the said road, at the expense and charge of the county, subject to, and constantly recognizing, respecting and preserving the rights of the owners of the mills, dam, flume and gate, the said owners being the predecessors of the petitioner.

In the spring or summer of 1868, Sylvester Townsend, then a member of the Levy Court, examined the condition of the road, dam and gates ; and so neglectful and careless had the Levy Court become in fulfilling the requirements of the act in keeping the said road in repair and safe for public travel, as the petition alleges, that it became evident to the said Townsend, that the gates would soon blow out if the Levy Court did not repair the road, and he so expressed himself. By reason, and in consequence of this neglect of the Levy Court, and its refusal

*12 Del. Laws, 622.

to obey the requirements of the act, the gates had, August 26, 1868, blown out, and there was made in the dam and road, a large breach about sixty feet wide, by reason of which, the water, ponded and restrained by said gates and dam for the use of the mills, was lost and wasted, so that the mills were obliged to remain idle for a long time to the great damage of the petitioner. The petitioner and his predecessor Kendall frequently applied to the Levy Court to repair the road, as required by the act, and they neglected and refused to do so, and thereby, every freshet made the breach larger and occasioned greater damage.

Finally, upon the application of the petitioner, a committee of the Levy Court visited the premises, and after much conversation, the petitioner, acting upon the authority and under the directions of the committee, built new gates and put them in the breach and filled in the earth and restored the dam, doing all the work in the most substantial manner except the small portion which was finished by the committee of the Levy Court after they had refused to pay the petitioner for the work he had done. Subsequently, upon presenting his bill to the Levy Court, that body refused to allow the whole bill, but agreed to refer the matter to three referees, one to be chosen by Sereck F. Shallcross, the chairman of the Levy Court, one by the petitioner, and a third to be selected by those two.

The Chairman of the Levy Court chose a referee, but subsequently, the Levy Court receded from its resolution to so refer the claim, and voted to pay to the petitioner the sum of $250 in full of his claim, which sum he has declined to accept. Subsequently, in the spring of 1873, a meeting of the Levy Court was held upon the said dam, that body consisting then and now of the respondents, and the road at that time needed repairs to prevent the

dam and gates from again blowing out.   At the meeting, the Levy Court instructed Ferdinand Janvier, one of their number, to repair the road and dam, and strengthen the sides of the flume, and to do that work at the expense of the County; but the said Janvier and the Levy Court and the persons constituting the Commissioners thereby neglected to carry out the instructions, and to make the repairs; and by reason of such neglect, the flumes and gates blew out in August, 1873, and the dam broke, and made a breach about seventy-five feet wide in the dam and road, and the water, ponded and restrained for the purposes of the mill, was wasted and lost.   The mills were thereby stopped and still remain idle, and the road was made unsafe for travel, and occasioned great damage to the petitioner.

Immediately after this breach, the petitioner notified Mr. Shallcross, the Chairman of the Levy Court, and through him, the members of the Court, being the respondents—that the road was in a very bad condition; that the side of the flume belonging to the gate (being the same which Mr. Janvier had been requested to repair and strengthen) over and upon which the road had been constructed, had been carried away by freshets, and that great damage had been done to the petitioner's mill property and rights, and greater damage was threatened by their neglect to keep the road and gates in proper order; and which he notified them to have done forthwith.

So far from obeying and carrying out the requirements of the Act of the general Assembly, and from respecting and preserving the rights of the petitioner in the mill property, gates and dam owned by the petitioner in fee, and in which the Levy Court had no rights of any kind, they had threatened and prepared—instead of repairing the road and dam—to drive piles and piling upon

the lands of the petitioner, and in place of the dam and into the ground owned by the petitioner, upon which the dam rested and was situated, and which was conveyed to and held by the petitioner in fee, and by title paramount and prior to any rights of the County (if any they have) in said dam, and the land underlying it; and also they had hauled and deposited logs, timber and other materials upon, and adjacent to, the said land, and were proceeding to drive piles and piling, and to erect an open pile bridge across the breach in the dam, and in lieu of said dam on the lands exclusively owned by the petitioner, in such manner as to permit the water heretofore ponded and restrained, for the purposes aforesaid, to flow through the piles, and to be continually wasted and lost in such manner as to produce irreparable damage and injury to the petitioner and his mill premises, water-power, rights and estate ; and that the respondents were tresspassing and threatened to continue to trespass upon the land belonging to the petitioner, and to which they have no claim or right of title in law or equity, and for purposes and in derogation of the petitioner's rights.

The petition prayed for a perpetual injunction against the respondents, to restrain them from committing and continuing these tresspasses, and from depositing logs, lumber, piles and other materials upon the land, and from driving piles and erecting, or attempting to erect or open a pile bridge, and from interfering with the mills, water power, dam and roads of the petitioner, except to repair, restore and keep up the same, with due respect to the petitioner's rights as they existed prior to the opening of said road ; and also for a preliminary injunction.

The bill was filed October 7, 1873, and a preliminary injunction awarded ; and it was, at the same time, ordered that the petitioner should show cause on the 14th of October, why the injunction should not be dissolved,

notice to be forthwith given to the Chairman of the Levy Court.

The rule was heard October 17th.

*S. M. Harrington*, for the petitioner.

*First.* As to the nature and extent of the petitioner's rights in the premises.

He has title of sixty years standing, in fee, prior to any rights of the hundred and county. During that period he and his predeccessors have held, these mill and water rights uninterruptedly. The *onus* is upon the county to shew that the petitioner's rights, by title and user were qualified, and how. The petition admits a road laid out, but by what authority does not appear, and it is alleged that there was no consideration. At most, even if there was a consideration paid, it is only a right of way; an easement was required subject wholly to the mill rights as before exercised. The right of way was subject, (1) to the right of the owner to use the land as previously, and (2) to the duty to keep the road in repair and safe for public use. This is imposed both by the acceptance of the road by the Levy Court and under the Act of Assembly.

*Second.* As to the nature and extent of the rights of the county.

How the county got the road does not appear,— whether upon a consideration, by dedication or by simple user. The hundred, it appears, accepted the road and made expenditures on the dam and flume. Thus it became responsible to maintain the dam.

The Levy Court, being applied to, refused to accept the responsibility until authorized by the Legislature. Such authority was obtained at the Levy Court's request. Thus the road was made a county charge, by law and at the instance of the Levy Court. 12 *Del. Laws,* 622.

Then the Levy Court did, as a fact, accept the road, under the Act, and assumed the duty and responsibility imposed upon it.

The county, either, (1) had a bare right of way, however acquired, over the dam, subject to the mill'rights, or, (2) a right to take the dam as a road coupled with the obligation to keep it in repair. Either way there is no right to substitute an open piling for the dam.

It is a principle, as to easements, that they carry nothing beyond what is necessary to the fair and proper enjoyment of the easement, only to this extent is the owner of the fee affected. Easements are construed strictly. 3 *Kent. Com.*, 528.

*Third.* What are the duties of the county?

The Act under which the county accepted the road recognizes it as being over a dam, and so recognizes the rights incident to the ownership of the dam and mill. The county is bound so to recognize these rights and to preserve them unimpaired. On the contrary it proposes to destroy them. But, in addition to the duty imposed by the Act and assumed by the county, there was an agreement between the owner and the Levy Court. Pursuant to the agreement the owner built the dam and gates.

Here was a duty resting both under the Act and their own agreement acted upon by the owner.

Then, further, they accepted the dam, so made under the agreement, and expended money on it.

Besides the duty to recognize the owner's rights, and not to invade them, is the positive duty to repair ;—a duty admitted by their action respecting the dam. This duty now comes with increased force because both the breaches which have occurred have been through their default.

In this case the old doctrine that an injunction will not be ordered to restrain a trespass does not apply.

81—DEL. CH. IV.

There are exceptions, as when the damage is irreparable or a multiplicity of suits will arise ; so that there is not an adequte redress at law. *Carter vs. West,* 2 *Green Ch.* 449 ; *Shreeve vs. Black, Ib.* 177; *West vs. Walker,* 2 *Green Ch.* 279, *note* ; *Robinson vs. Lord Byron,* 1 *Bro. C. C.* (588); *Lane vs. Newdegate,* 10 *Ves.* 193 ; *Rankin vs. Huskisson,* 5 *Sim.* 13 ; *Spencer vs. Railroad Co.,* 8 *Sim.* 193.

Cases, like the present, of injury to water rights are among those·in which there have been injunctions issued to restrain trespass. *Frick vs. Lawrence,* 20 *Conn.,* 117; *Belknap vs. Trimble, 3 Paige,* 557 ; *Gardner vs. Newbnrgh,* 2 *Johns. Ch.,* 162.

A party whose title, *is not disputed* stands as well for an injunction as one whose title is established at law. *Quackenbush, vs. Van Riper,* 2 *Green Ch.,* 350.

Whatever may be the county's rights in the dam, they have no right in the inheritance. The piling is in effect appropriating to their own use the land of the petitioner. for a bridge without compensation, which must be money assessed before entry and not afterwards recovered as damages. *Gardner vs. Newburgh,* 2 *Johns, Ch.,* 162; *Perry vs. Wilson,* 7 *Mass.,* 393 ; *Callender vs. Marsh,* 1 *Pick.* 430 ; *Charles River Bridge vs. Warren Bridge,* 6 *Pick,* 404 ; *Piscataqua Bridge vs. New Hampshire Bridge,* 7 *N.H.* 70.

The Court has unquestioned jurisdiction to restrain public officers from injuring others under a color of right. *Cooper vs. Alden,* 3 *Harring. Ch.,* 72 ; *Belknap vs. Belknap,* 2 *Johns. Ch.,* 463 ; *M. & H. Railroad Co. vs. Artcher,* 6 *Paige,* 83, 88 ; *Coates vs. Railroad Co.,* 1 *Russ. & M.,* 181 ; *Farmum vs. Blackstone Canal. Corporation,* 1 *Sumn.,* 46.

*Gray,* for the defendants.

I admit the enlargement of the jurisdiction in trespass cases ; but insist that the enlargement is cautiously made, and only in cases clearly exceptional. Most of these

are cases of irremediable injury.   This is not a case for an injunction on the facts.   The point of dispute is here ; the petitioner contends that the Levy Court is bound to keep up the dam, as a dam, and the gates and sluiceway—the entire thing.   The Levy Court contends that the Act obliges them, not to keep up the petitioner's mill-dam, but to keep the road sufficient for public use. The Levy Court is willing to put up the dam to the gates, respondent to restore the gates and side of the sluiceway ; they have offered this.   The Levy Court owes a duty only to the public, which they discharge by keeping the county roadway convenient to the public.

The public have a right of way.   It is not a right of way subject to fee but a fee subject to the right of way. The petition alleges that there will be irremediable injury but shows no evidence of the fact ; he alleges only a legal influence.   The only fact relied on is that they are putting in piles instead of a dam.   Waste of the water is injury, but this is not legal damage unless it is their duty to maintain the dam

As to the power of the Court, see *Hilliard on Inj*. 443, 319; 222, 14, 21, 556.

THE CHANCELLOR considered that the injunction should be continued and the rule was discharged.

NOTE.   This case proceeded no further, being settled by the parties.

JAMES E. CLAWSON,

*vs.*

JOSEPH PRIMROSE,

*Kent, Sept. T. 1873.*

The English doctrine of presumptive title to light and air, received over land of another person, arising from the uninterrupted enjoyment of it for twenty years and upward, through the window of a dwelling house, was part of the common law of England and of the colonies at the period of