202 A.2d 576 (1964)
WILMONT HOMES, INC., Defendant Below, Appellant,
v.
Morris WEILER and Marilyn R. Weiler, his wife, Daniel Bergstrom and Esther V. Bergstrom, his wife, George L. Taylor and Grace P. Taylor, his wife, Robert B. Stewart, Jr., and Anne C. Stewart, his wife, and John Panchak and Dorothy Panchak, his wife, Plaintiffs Below, Appellees.
Supreme Court of Delaware.
July 6, 1964.
Robert B. Walls, Jr., Wilmington, for appellant.
Vincent A. Theisen, of Theisen & Lank, Wilmington, for appellees.
TERRY, C. J., and WOLCOTT and CAREY, JJ., sitting.
*578 WOLCOTT, Justice.
This is an appeal from a final judgment of the Vice Chancellor ordering the abatement of the nuisance of periodic flooding of the plaintiffs' land by surface waters, the abatement to be accomplished in accordance with a certain engineering plan.
The plaintiffs are five families, each of which purchased a house and lot in Colonial Woods, a housing development of defendant, Wilmont Homes, Inc. The separate purchases of the plaintiffs were made as the result of an inspection of a sample house and the lot on which it was erected. The Vice Chancellor found as a fact that the purchases were made on the assurance that the lots on which the houses were to be built would be usable for gardening and other outdoor activity, and specifically that the cellars of the houses would be dry. These findings we accept since they find support in the record.
Plaintiffs selected their lot locations from a plan exhibited by defendant. Plaintiffs' lots all face on Brandywine Boulevard and lie one against the other. Upon completion of their houses, but before completion of the grading of their lots, plaintiffs took possession of their properties and moved in.
Defendant thereafter completed the grading of the yards so that a ridge or mound of earth-covered debris traversed the rear of plaintiffs' lots along the rear property line. Also, the grade of Brandywine Boulevard in front of plaintiffs' properties was established a foot and a half higher than originally planned. The result has been that surface water from fourteen or eighteen houses and lots, higher in elevation than plaintiffs' properties, collects in plaintiffs' back yards and is prevented by the higher elevation of Brandywine Boulevard from draining off into the gutter of that street.
The surface water so collected forms a small pond in plaintiffs' back yards which freezes in winter and becomes stagnate in summer. From this pond seepage of water penetrates the cellar walls of plaintiffs' properties causing damage to the walls.
On several occasions defendant has tried to remedy the situation by re-grading the land, but to no avail. Finally, recognizing that it had a responsibility in the matter, defendant proposed to install an open grass drainage swale to pass off the surface water to a lower level. This plan was rejected by plaintiffs for the reason that it would deprive them of the use of approximately half of their back yards and would traverse their properties with an open drainage ditch contrary to what they had contracted to buy.
Negotiations continued with plaintiffs ultimately suggesting the installation in accordance with engineering plans of a different plan for the elimination of the surface *579 water. This plan defendant rejected, because of the expense.
An impasse having been reached, this action was filed for the abatement of a nuisance, viz., the continued flowing and collecting of large amounts of surface water upon plaintiffs' land caused by the defendant's negligent grading of the adjacent land.
The action below ran through the course of a motion for summary judgment, a motion to dismiss, and a full trial on the merits and, finally, the Vice Chancellor's order directing the defendant to abate the nuisance in accordance with an engineering plan submitted by the plaintiffs. The judgment ordered defendant within thirty days to commence the work and authorized plaintiffs, in the event defendant did not perform, to contract with a designated contractor, at defendant's expense, to have the work done. Defendant appeals.
Basically, defendant admits liability for the cost of getting rid of the excessive surface water collected on plaintiffs' land, but argues that plaintiffs have no standing in a Court of Chancery for the reason that by doing the necessary work themselves, they can establish their damages and sue for them at law. The argument is based upon the fundamental proposition that equity has jurisdiction only when there is no adequate remedy at law.
This action, however, is for the abatement of a nuisance, a subject matter over which equity has always had jurisdiction. To be sure, the remedy is not granted for trifling reasons, but where the injury is real and continuing, equity considers the remedy of damages at law to be inadequate and will take jurisdiction to abate the nuisance. 4 Pomeroy's Equity Jurisprudence (5th Ed.), § 1350; 2 Daniel's Chancery Pleading & Practice (4th Ed.) 1637. We think plaintiffs have successfully shown that the nuisance they seek to abate is real and continuing, and of the type for which equity will give relief. Indeed, there is more than a suggestion in the record to show that only defendant can abate this nuisance since its abatement probably requires going on the land of others, which defendant may do by reason of a reserved easement for that purpose, but which plaintiffs may not.
We are of the opinion that the Vice Chancellor properly took jurisdiction over this controversy.
Defendant then argues that, assuming the Court of Chancery had jurisdiction over the cause, it improperly exercised it. The argument is based upon the contention that this action in reality is one seeking the specific performance of a building contract, and that because of the difficulties inherent in the enforcement of such a decree by attachment for contempt, equity will not grant relief. Defendant cites in support 5 Pomeroy's Equity Jurisprudence (5th Ed.), § 1402 and Annotation, 164 A.L.R. 802.
There are at least two answers to defendant's argument in this respect. In the first place the flow of water upon plaintiffs' land is caused by the grade of other land in the area over which plaintiffs have no control, but upon which defendant has the right to enter to make necessary corrections. It seems to us moreover that the plan approved by the Vice Chancellor is sufficiently precise and definite to permit an easy determination of ultimate compliance. Thus, the facts of this case fall within the exceptions to the general rule noted in the authorities cited by defendant.
In the second place, defendant, we think, is in error in regarding the action as one for the specific performance of a building contract. It is not such at all. It is a suit for the abatement of a nuisance of the defendant's creation. It is, of course, true that of necessity the Vice Chancellor had to find that the defendant's action had deprived the plaintiffs of what they had purchased, but to say that an order to *580 abate the nuisance which deprived them of their full purchase is the specific performance of a building contract is to confuse plaintiffs' right to relief with the form of relief granted.
Admittedly, Chancery has jurisdiction to abate a nuisance. An admitted nuisance of the defendant's creation being present on plaintiffs' land, a fortiori, they have the right to the relief of abatement. This, they have sought and obtained. The question then becomes, not the right to relief, but the form of the relief to be awarded.
Fundamentally, once a right to relief in Chancery has been determined to exist, the powers of the Court are broad and the means flexible to shape and adjust the precise relief to be granted so as to enforce particular rights and liabilities legitimately connected with the subject matter of the action. 1 Pomeroy's Equity Jurisprudence (5th Ed.), § 115. It is necessary for the Court to adapt the relief granted to the requirements of the case so as to give to the parties that to which they are entitled. 19 Am.Jur., Equity, § 123; 30 C.J.S. Equity § 599.
This, we think, the Vice Chancellor has done in the case at bar. He held a full hearing and after determining the right of plaintiffs, permitted all parties to produce evidence upon the means of insuring the preservation of the plaintiffs' right. Defendant as well as the plaintiffs was given an opportunity to suggest the means. Thereafter, the Vice Chancellor determined that of all the means suggested the plan finally adopted was the only one which would accomplish the necessary result. We think in the light of the record that this conclusion was proper.
The final judgment, accordingly, ordered defendant to abate the nuisance by installing a drainage system in accordance with the approved plan, and further provided that if defendant failed to commence such work within thirty days, that a named contractor be employed to make the installation at the expense of the defendant. Under the circumstances, we think the Vice Chancellor in his order adapted the relief to the circumstances. Indeed, it is difficult to imagine what other form the relief could have taken.
Defendant, however, argues that the judgment in effect is a money judgment against the defendant, thus clearly demonstrating that plaintiffs had an adequate remedy at law. As we have pointed out, however, this suit falls within a field of original equity jurisdiction, the abatement of a nuisance. This being the case, it is settled law that when equity obtains jurisdiction over some portion of the controversy it will decide the whole controversy and give complete and final relief, even though that involves the grant of a purely law remedy such as a money judgment. 1 Pomeroy's Equity Jurisprudence (5th Ed.), § 231. Therefore, even though the judgment below be regarded as in part at least a judgment for money, which we think not, that lies within the power of the Vice Chancellor to order.
Next, defendant argues that the proposed installation is so technical and its supervision so difficult that Chancery is not equipped to oversee it. Also attacked is the provision of the judgment authorizing the retention of the engineering firm which prepared the plan as supervisor of the job. We think the point without merit. The scheme evolved by the Vice Chancellor is a practical approach in the formulation of the relief to which plaintiffs are entitled. Furthermore, it is to be noted that defendant has the election to perform the work itself.
Next, defendant charges plaintiffs with unclean hands. The basis of the charge is that in the verified complaint plaintiffs averred that a plan, other than the one finally urged upon the Court, was the only plan which would give them relief. Defendant charges plaintiffs thereby *581 with having made a false statement in a verified pleading which justifies the denial of equitable relief, citing Zearfoss v. Zearfoss, 112 N.J.Eq. 530, 164 A. 893.
The Zearfoss case, however, was decided under a specific rule of Court governing pleadings in divorce actions upon the ground of adultery. It has no pertinency in the case at bar. However, a complete answer to the point is that after filing the complaint, at a pre-trial conference plaintiffs submitted a further plan, the one finally approved, and leave to amend the complaint was granted. This was done with full disclosure to the defendant. In our opinion there is no showing made on which to base a finding of unclean hands on the part of plaintiffs.
Finally, defendant argues that the Vice Chancellor committed error in admitting parol evidence as to representations made by defendant's agent to plaintiffs. The representations referred to were assurances made by defendant's president to plaintiffs separately that the house to be sold to each of them would be the same as the sample house and that the land surrounding the house would be usable. Defendant now claims that these representations were inadmissible under the Parol Evidence Rule since they vary and contradict paragraphs 22 and 23 of the sales agreement.
We think the evidence does not vary or contradict any term of the sales agreement. Paragraph 22 specifically provides that the buyer purchases on the basis of plans and specifications and on inspection of the sample house. The representations made to the buyers were actually in conformity with paragraph 22 and not in variance with it. Paragraph 23 is merely a general statement that the sales agreement contains the entire agreement between the parties. Obviously, the parol evidence did not vary or contradict this provision.
Defendant also objects to the exclusion by the Vice Chancellor of the testimony of the Chief Architect of the FHA as to the FHA regulations concerning approved and allowable areas of usable back yards. The argument is that the testimony was relevant on the question of what was a reasonable area to constitute a suitable back yard.
The difficulty with the argument is that the question before the Vice Chancellor was not what portion of plaintiffs' back yards should be suitable for use, but was the method by which all of the back yards could be made available for use. In any event, even if admissible, we are of the opinion that the exclusion of this testimony was at most nonprejudicial error.
For the foregoing reasons the judgment below is affirmed.