COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:  September 27, 2021
Date Submitted: June 23, 2021

Zachary A. George, Esquire
Hudson, Jones, Jaywork & Fisher, LLC
225 South State Street
Dover, Delaware 19901

Brian V. DeMott, Esquire
Baird Mandalas Brockstedt, LLC
2711 Centerville Road, Suite 401
Wilmington, Delaware 19808

Re: *Michael Hamby v. Richard L. Sapp Farms, LLC, Richard L. Sapp, Sr., Richard L. Sapp, Jr., Richard L. Sapp, III, Trey Sapp, and Michelle Sapp* C.A. No. 2020-0911-PWG

Dear Counsel:

Pending before me is a motion to dismiss for lack of subject matter jurisdiction and, in the alternative, a motion to sever and transfer the legal claims to the Superior Court. This matter arises out of a property dispute between two neighbors in Kent County, Delaware. A homeowner's residential property is generally surrounded on three sides by his neighbor's farmland. The homeowner claims that the neighbor's farming operations' use of large, industrial size irrigation systems, which he alleges propels copious amounts of water onto the homeowner's property, is a continuing trespass and nuisance. He seeks injunctive relief and damages. The neighbor conducting farming operations counterclaims for damages for trespass when the homeowner discharged a firearm over and onto its farmland. The farming neighbor moved to dismiss the homeowner's action,

arguing that the Court of Chancery has no subject matter jurisdiction because there is no continuing trespass and the homeowner has an adequate remedy at law. Alternatively, the farming neighbor seeks to sever and transfer the legal claims to the Superior Court for trial by jury. I find that Petitioner has posited a possible claim for which equitable relief may be granted. I also determine that this Court can properly invoke the clean-up doctrine to resolve all issues in this litigation under its ancillary jurisdiction. I recommend that the Court deny both the Respondents' motion to dismiss and their alternative motion to sever and transfer the legal claims to Superior Court. This is a final Master's Report.

## I. BACKGROUND

Michael Hamby ("Petitioner") owns property located at 5050 Milford Harrington Highway, Harrington, Delaware (the "Residential Property").[1] Richard L. Sapp Farms LLC owns agricultural lands located at 5144 Milford Harrington Highway, Harrington, Delaware (the "Agricultural Property.").[2] Richard L. Sapp, Sr., Richard L. Sapp, Jr., Richard L. Sapp, III, and Michelle Sapp all work for Richard L. Sapp Farms, LLC (collectively "Respondents").[3]

---

[1] Docket Item (D.I.) 1, ¶ 1.

[2] *Id.*, ¶¶ 2, 4.

[3] *Id.*, ¶ 4; Richard L. Sapp III is also known as Trey Sapp. D.I. 8, ¶ 4.

Petitioner lives at the Residential Property.[4] The Residential Property generally abuts the Agricultural Property on three sides, and fronts on the Milford Harrington Highway on the fourth side.[5] Respondents use the Agricultural Property for commercial agricultural operations throughout the year and operate industrial/commercial irrigation systems (the "irrigation systems") to water the crops on the Agricultural Property adjacent to the Residential Property.[6]

Petitioner claims that, because of Respondents' use of the irrigation systems, which are designed to "propel water long distances at high pressure,"[7] a deluge of water continually flows onto the Residential Property, causing damage to the Residential Property.[8] He also asserts that Respondents have entered onto the Residential Property and damaged a light post.[9] Petitioner asserts that he has repeatedly demanded that Respondents "cease and desist" from interfering with the Residential Property.[10] Respondents claim that, on or about July 7, 2020,

---

[4] D.I. 1, ¶ 7.

[5] *Id.*, ¶ 8; *see* D.I. 8, ¶ 8.

[6] D.I. 1, ¶¶ 9, 11.

[7] *Id.*

[8] *Id.*, ¶¶ 13, 14, 23. Petitioner alleges that, because of the irrigation systems, glass and shingles on three storage sheds on the Residential Property have been damaged, and that the sheds suffer from rot. *Id.*, at ¶¶ 29, 30.

[9] *Id.*, ¶¶ 32-34.

[10] *Id.*, ¶ 12.

Petitioner discharged a firearm while on the Residential Property over or onto the Agricultural Property, and may have done so on other occasions.[11]

Petitioner filed the Petition for Permanent Injunction and Damages ("Petition") on October 23, 2020.[12] Respondents filed their Answer and Counterclaim, which included a demand for a "Jury of Twelve," on December 15, 2020.[13]

Respondents filed the Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion"), or, Alternatively, Motion to Sever and Transfer ("Alternative Motion") on March 26, 2021.[14] Petitioner filed his Opposition to the Motion and Alternative Motion on May 21, 2021, and Respondents filed their Reply on June 23, 2021.[15]

## II. ANALYSIS

"As Delaware's Constitutional court of equity, the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction

---

[11] D.I. 8, ¶¶ 2, 3, 10.

[12] D.I. 1.

[13] D.I. 8.

[14] D.I. 14.

[15] D.I. 18; D.I. 19.

is conferred by statute."[16] "In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim."[17] "The analysis requires a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available or fully adequate."[18] "This Court has jurisdiction if the complaint alleges facts which, if true, demonstrate the existence of an equitable relationship (*e.g.*, fiduciary duties) or the need for uniquely equitable relief (*e.g.*, injunction)."[19]

A. *This Court has Subject Matter Jurisdiction over Petitioner's Trespass Claim.*

The issue is whether Petitioner's claim for trespass is one for which the equitable remedy of injunction could issue. Respondents seek dismissal of this action because they allege Petitioner has an adequate legal remedy in the form of

---

[16] *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *6 (Del. Ch. Mar. 5, 2021) (citations omitted).

[17] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004); *see also FirstString Rsch., Inc. v. JSS Med. Rsch. Inc.*, 2021 WL 2182829, at *4 (Del. Ch. May 28, 2021) ("This Court will go behind the façade of prayers to determine the true reason for which the plaintiff has brought suit.") (internal quotation marks and citations omitted).

[18] *Endowment Rsch. Grp., LLC*, 2021 WL 841049, at *6 (internal quotation marks and citation omitted).

[19] *Gordon v. Nat'l R.R. Passenger Corp.*, 1997 WL 298320, at *6 (Del. Ch. Mar. 19, 1997).

damages to redress his trespass claim.[20]  They further argue that "the Petition [alleges] that Respondents perpetrated a series of past trespasses against the Property and that Petitioner is concerned that future, ordinary trespasses may occur later."[21]  And, because water is not being sprayed on Petitioner's property perpetually, and Petitioner seeks to enjoin speculative future trespasses, which are not sufficiently severe to warrant equitable intervention, Respondents assert Petitioner is not entitled to an injunction, and money damages are a sufficient remedy.[22] Petitioner responds that the Petition alleges a continuing trespass and harm caused by Respondents and, without an injunction, there will be a multiplicity of lawsuits because the harm will continue in the future.[23]

"[T]his Court has subject matter jurisdiction over . . . claims for both continuing trespass and private and continuing nuisance."[24]  It is settled law that an

---

[20] D.I. 14, at 4.

[21] *Id.*, at 5.

[22] *Id.*, at 4-5.

[23] D.I. 18, ¶¶ 5-8.

[24] *Gordon*, 1997 WL 298320, at *11.  In a line of cases that starts in the early nineteenth century, this Court has held that it can exercise jurisdiction over claims to grant injunctive relief for trespass or nuisance where legal remedies are inadequate. *See, e.g., Robinson v. Oakwood Vill., LLC*, 2017 WL 1548549 (Del. Ch. Apr. 28, 2017); *Alfieri v. State*, 1984 WL 478437 (Del. Ch. Aug. 8, 1984); *Goldinger Bros., Inc. v. Warren*, 1978 WL 21997 (Del. Ch. July 18, 1978); *Green v. Cowgill*, 61 A.2d 410 (Del. Ch. 1948); *Town of Seaford v. Eastern Shore Pub. Serv. Co.*, 191 A. 892, 898 (Del. Ch. 1937); *Dill v. Dill*, 91 A. 450, 451 (Del. Ch. 1914); *Tatnall v. Shallcross*, 4 Del. Ch. 634, 642 (Del. Ch. 1873); *Fleming v. Collins*, 2 Del. Ch. 230, 232 (Del. Ch. 1859); *Huggins v. Little*, 2 Del. Cas. 595 (Del. Ch. 1821).

injunction will issue in this Court "against one not privileged in law to go upon the land, where plaintiff shows title, and continued trespass and defendant fails to show a privilege or right to enter."[25]  And, this Court has recognized that the flow of water can constitute a continuing trespass that could support injunctive relief in cases where legal remedies are inadequate.[26]

First, I consider Respondents' argument that Petitioner's trespass claim is not for a continuing trespass.  They assert that this Court, in *Gordon v. National Railroad Passengers Corporation* ("*Gordon*"),[27] adopted the definition of "continuing trespass" from the Restatement (Second) of Torts, which provides that a continuing trespass results from the failure to remove from another's land any "thing which he has tortiously erected or placed" on that land "for the entire time during which the thing is wrongfully on the land."[28]  The trespass in *Gordon* was a deposit of contaminated fill.[29]  The *Gordon* defendants attempted to distinguish their situation from cases involving "continuing acts of flowing water," arguing that there was no threat that further fill would be deposited so there was no

---

[25] *Amer v. NVF Co.*, 1994 WL 279981, at *7 (Del. Ch. June 15, 1994) (citations omitted).

[26] *See, e.g., Robinson*, 2017 WL 1548549, at *15; *Alfieri*, 1984 WL 478437, at *3; *Glassman v. Weldin Farms, Inc.*, 359 A.2d 669 (Del. Ch. 1976).

[27] 1997 WL 298320 (Del. Ch. Mar. 19, 1997).

[28] D.I. 19, ¶ 6 (citing *Gordon*, 1997 WL 298320, at *11).

[29] 1997 WL 298320, at *2.

continuing harm.[30]   In *Gordon*, then Chancellor Chandler held this Court had jurisdiction over the matter because, if the claim is proven, the deposit constituted a continuing trespass.  He applied the "continuing trespass" definition in "section 161 of the Restatement (a party's failure to remove a thing which he has tortiously placed on land of another constitutes a continuing trespass for as long as the thing remains)" to the facts in that case, but did not overrule other cases' holdings addressing different types of trespasses.[31]

Here, unlike *Gordon*, the alleged trespass is for continuing acts of flowing water so cases addressing water damage to property as trespass do apply.  "Prior cases in this Court involving the flow of water have found that the instrumentality which constitutes the means for the trespass may take any intrusive form, including water from an improperly constructed artificial structure.  That is, a trespass then may be said to consist of the intrusion of water from a condition created by the defendant which interferes with plaintiffs' use of their property."[32]

---

[30] *Id.*, at *7.

[31] *Id.*, at *9.

[32] *Robinson v. Oakwood Vill., LLC*, 2017 WL 1548549, at *15 (Del. Ch. Apr. 28, 2017) (cleaned up); *see also Beckrich Holdings, LLC v. Bishop*, 2005 WL 5756847, at *11 (Del. Ch. June 9, 2005) ("Trespass is entry onto real property without the permission of the owner, and may consist of the intrusion of water that interferes with plaintiff's use of their property."); *Alfieri v. State*, 1984 WL 478437, at *3 (Del. Ch. Aug. 8, 1984) ("Any entry on land in the peaceable possession of another is deemed a trespass," and the "instrumentality which constitutes the means for the trespass may take any intrusive form, including water . . ."); *Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576, 579 (Del.

Petitioner asserts that Respondents have used the irrigation systems, which propel copious amounts of water onto the Residential Property, causing the alleged harm, on a continual basis for years.[33] Based upon the factual allegations in the Petition, it appears that such use, and the resulting harm, will continue in the future.

Next, I consider Respondents' claim that any damage caused by the irrigation systems has not been severe and does not warrant injunctive relief, relying on the Court's holding in *Nebeker v. Berg*.[34] In *Nebecker*, landowners sought to enjoin defendants, the commissioners of Newport, Delaware, and their agents, from trespassing on the landowners' property and destroying fences, shrubbery, grass, and crops on their property.[35] The defendants admitted that they tore down fences and destroyed shrubbery to lay a sidewalk across the front of the landowners' lot, but responded that no additional fences would be torn down, or

---

1964) (upholding the Vice Chancellor's finding of jurisdiction and issuance of an injunction to abate a nuisance where surface water collected in plaintiffs' back yards because of negligent grading of adjacent land by defendants).

[33] The Petition claims that Petitioner is suffering ongoing harm because Respondents "continually propel copious amounts of water onto [Petitioner's] property;" "[f]or years and to this day, . . . Respondents have trounced Petitioner's backyard with water from these giant apparatuses;" "[t]he deluge of water sprayed onto Petitioner's real property has interfered with his right to quiet use and enjoyment of his backyard;" and that Petitioner will continue to suffer irreparable harm without an injunction. D.I. 18, ¶ 5 (citing D.I. 1, ¶¶ 12, 13, 23) (emphasis omitted).

[34] D.I. 19, ¶ 8 (citing *Nebeker v. Berg*, 115 A. 310, 311 (Del. Ch. 1921)).

[35] *Nebecker*, 115 A. at 310.

shrubbery, grass or crops destroyed, in the future.[36] Weighing the evidence at the preliminary injunction stage, the Court denied the preliminary injunction, concluding that the actionable trespass "has already been done and nothing is threatened in the future."[37]

Respondents' reliance on *Nebecker* is misplaced. First, in *Nebecker*, there was no threat of future serious harm.[38] Here, Petitioners have alleged an ongoing and future harm. Second, the *Nebecker* Court weighed evidence on a request for preliminary injunction, while the Motion here applies the standards for determining subject matter jurisdiction.[39]

For purposes of determining jurisdiction, I assume the factual allegations in the Petition are true, and decline to find that the alleged trespass is not sufficiently severe to warrant injunctive relief. Petitioner's factual allegations, if proven, show a continuing trespass and a threat of continuing harm in the future for which an

---

[36] *Id.,* at 311.

[37] *Id.*

[38] The *Nebecker* Court held that the only possible future injury was damage caused by "walking over the strip [where the sidewalk was laid] and finishing the nearly completed work." *Id.* The Court did not consider this injury of "such serious nature as would justify the issuance of a preliminary writ." *Id.*

[39] *See Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

injunction could issue. I conclude that Petitioner has shown a genuine claim for equitable relief such that this Court has jurisdiction over the matter.[40]

  B. *This Court Should Exercise Ancillary Jurisdiction over Legal Claims under the Clean-up Doctrine.*

In the alternative, Respondents strenuously argue that this Court should sever and transfer the legal claims in this action to the Superior Court because (1) Respondents have a right to a jury trial, (2) the Superior Court is well-equipped to handle common law tort claims like the parties' mutual trespass claims, and (3) the case is in an early enough stage that a transfer would not hinder judicial economy.[41] Petitioner responds that this Court can hear legal claims under the clean-up doctrine.[42] Respondents reply that the Court of Chancery may exercise jurisdiction under the clean-up doctrine but that the interests of justice would best be served by transfer.[43]

The Chancellor recently affirmed Delaware's well-established law "maintaining the viability of the clean-up doctrine over a right to a jury trial as to

---

[40] Whether Petitioner is entitled to relief (and can meet his burden to demonstrate each element of the trespass claim), however, "is a separate determination." *See, e.g., Gordon v. Nat'l R.R. Passenger Corp.*, 1997 WL 298320, at *6 (Del. Ch. Mar. 19, 1997).

[41] D.I. 14, at 5-11; D.I. 19, ¶¶ 2-4.

[42] D.I. 18, ¶ 10.

[43] D.I. 19, ¶¶ 4, 5.

11

intertwined issues."[44] "It is a well-established that if a controversy contains any equitable feature that would provide this Court with subject-matter jurisdiction over any part of a controversy, the Court may, in its discretion, take jurisdiction over the entire controversy."[45] "[O]nce a right to relief in Chancery has been determined to exist, the powers of the Court are broad and the means flexible to shape and adjust the precise relief to be granted so as to enforce particular rights and liabilities legitimately connected with the subject matter of the action."[46]

"This court applies several factors in determining whether it will entertain ancillary legal claims" under the clean-up doctrine.[47] These factors are "whether retention of the claim will: 1) resolve a factual issue which must be determined in the proceedings; 2) avoid a multiplicity of suits; 3) promote judicial efficiency; 4) do full justice; 5) avoid great expense; 6) afford complete relief in one action; or 7)

---

[44] *FirstString Research, Inc. v. JSS Medical Research Inc.*, 2021 WL 2182829, at *10 (Del. Ch. May 28, 2021). In that opinion, the Chancellor acknowledged that "access to a jury trial is [not] a trivial matter to be ignored." *Id.*, at *11. She held that it "is an important factor to consider when determining whether this court will exercise its discretion to decide the whole controversy," and also "one of the factors motivating this court's willingness to go behind the façade of prayers to determine the true reason for which the plaintiff has brought suit." *Id.* (internal quotation marks and citations omitted). Here, I determine that Petitioner has shown a genuine claim for equitable relief and since the equitable and legal matters are intertwined, it is in my discretion to take jurisdiction over the entire controversy.

[45] *Clark v. Teeven Holding Co.*, 625 A.2d 869, 881 (Del. Ch. 1992).

[46] *FirstString Research, Inc.*, 2021 WL 2182829, at *6 (quoting *Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576, 580 (Del. 1964)).

[47] *Id.*

overcome insufficient modes of procedure at law."[48] In this matter, there are legal claims for Petitioner's damages claims for trespass and nuisance, and Respondents' trespass counterclaim ("Counterclaim") seeking damages. I analyze each of these claims in turn under the factors identified above.

1. Petitioner's Damages Claims

Petitioner seeks money damages for trespass and nuisance for interference with Petitioner's quiet use and enjoyment of the land, and for trespass to chattels for property damage allegedly caused by the Respondents' use of the irrigation systems.[49] The factors weigh heavily in favor of this Court exercising jurisdiction under the clean-up doctrine. I consider whether the facts involved in the legal and equitable claims are "so intertwined that it would be undesirable or impossible to sever them."[50] The basis for Petitioner's request for injunctive relief depends on a factual finding concerning Respondents' alleged trespasses onto the Residential Property, which, for the most part, present the same factual issues as the Petitioner's legal claims.[51] Therefore, I find Petitioner's legal and equitable claims

---

[48] *Id.* (quoting *Acierno v. Goldstein*, 2004 WL 1488673, at *5 (Del. Ch. June 25, 2004)).

[49] D.I. 1 at ¶¶ 21-34.

[50] *Clark*, 625 A.2d at 882.

[51] The claim regarding Respondents' alleged destruction of the Petitioner's light post is not part of Petitioner's request for injunctive relief, so facts pertaining to that claim may fall outside of the evidence presented to show the need for an injunction. However, given that the light post claim plays a small role in the larger property dispute between the

are so intertwined that it would be undesirable to sever them. And, unlike the Superior Court, this Court can issue an injunction should Petitioner prove a continuing trespass, and is uniquely situated to do full justice and afford complete relief in one action. Exercising this Court's ancillary jurisdiction under the clean-up doctrine will avoid a multiplicity of suits and potentially inconsistent factual findings, thereby promoting judicial efficiency and avoiding litigation expenses.

At this stage, Petitioner shows a genuine claim for injunctive relief and, therefore, it is within this Court's discretion to exercise its ancillary jurisdiction over the remainder of Petitioner's claims under the cleanup doctrine. For the reasons discussed above, it is appropriate for Petitioner's damages claims to remain in this Court under the clean-up doctrine.

### 2. Respondent's Counterclaim

Respondents' Counterclaim seeks money damages for trespass arising out of an incident in July of 2020 when Petitioner allegedly discharged a high-power firearm over or onto Respondent's land.[52] The factors also weigh in favor of this Court exercising jurisdiction over the Counterclaim under the clean-up doctrine. While the Counterclaim presents a set of specific facts that goes beyond the scope of Petitioner's claims, that alone is not sufficient for this Court to decline to

---

parties, it would be inefficient and cause a multiplicity of suits for that claim to be addressed in a separate legal action.

exercise ancillary jurisdiction.[53] The pleadings, considered together, present a property dispute between two neighbors that consists of different elements but involves overlapping and intertwined issues. It would be undesirable and inefficient to sever the Counterclaim since, if this Court doesn't exercise its ancillary jurisdiction over the Counterclaim, the parties will be subjected to piecemeal litigation regarding the same overall dispute, wasting not only the litigants' time and money but also the Judiciary's resources.

It is within this Court's discretion to exercise its ancillary jurisdiction over the Counterclaim under the cleanup doctrine. As discussed above, it is appropriate for the Counterclaim, along with Petitioner's damages claims, to remain in this Court under the clean-up doctrine.

## III. CONCLUSION

For the reasons stated above, I find Petitioner shows a genuine claim for equitable relief and recommend the Court deny Respondents' motion to dismiss for lack of subject matter jurisdiction. I also recommend the Court deny Respondents' alternative motion to sever and transfer the legal claims to the Superior Court for trial by jury and, instead, exercise its ancillary jurisdiction over the legal claims

---

[52] D.I. 8.

[53] *See Utz v. Utz*, 1999 WL 1425413 (Del. Ch. Dec. 22, 1999).

under the clean-up doctrine. This is a final Master's Report, and exceptions may

be taken under Court of Chancery Rule 144.

Sincerely,

/s/ Patricia W. Griffin

Master Patricia W. Griffin