**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

January 22, 2026

Christopher Viceconte, Esq.
Jennifer M. Rutter, Esq.
FBT Gibbons LLP
300 Delaware Ave., Ste. 1015
Wilmington, DE 19801

A. Thompson Bayliss, Esq.
Christopher Fitzpatrick Cannataro, Esq.
Madison Barnes, Esq.
Abrams & Bayliss LLP
20 Montchanin Road, Ste. 200
Wilmington, DE 19807

> RE: *Benjamin Carlson v. Jacob Rodriguez, et al.*,
> C.A. No. 2025-1374-BWD

Dear Counsel:

I write in response to plaintiff Benjamin Carlson's ("Plaintiff") January 5, 2026, letter asking the Court to endorse the coordination of this action and a related Superior Court action and the cross-designation of the presiding Superior Court Judge as a Vice Chancellor to hear both actions.

On November 25, 2025, Plaintiff initiated lawsuits before the Court of Chancery and the Superior Court through the filing of identical verified complaints (the "Complaints") in each court. *See Carlson v. Rodriguez*, C.A. No. 2025-1374-BWD (Del. Ch.) (filed Nov. 25, 2025) (the "Chancery Action"); *Carlson v. Rodriguez*, C.A. No. N25C-11-269 SKR CCLD (Del. Super.) (filed Nov. 25, 2025)

(the "Superior Court Action"). The Superior Court Action is assigned to The Honorable Sheldon K. Rennie; the Chancery Action is assigned to me.

The Complaints allege that Plaintiff and defendant Jacob Rodriguez ("Defendant"), while students together at the Massachusetts Institute of Technology ("MIT"), co-founded Oligo Incorporated (the "Company"), a Delaware corporation that designs and manufactures "state-of-the-art payload-centered lower earth orbit satellites." Verified Compl. [hereinafter Compl.] ¶¶ 1, 5–7, 34, Dkt. 1. Before forming the Company, Plaintiff and Defendant entered into a Founders' Collaboration Agreement ("FCA") contemplating that Plaintiff would own a 40% interest and Defendant would own a 60% interest in the Company, but both parties would "share equally in the management" thereof. *Id.* ¶¶ 39, 42, 44–45. After Defendant incorporated the Company, listing himself as the sole incorporator, Plaintiff and Defendant also executed a Common Stock Purchase Agreement ("CSPA"), which sets a vesting schedule for the parties' shares, grants the Company a right to repurchase unvested shares in the event of termination, and provides for accelerated vesting in the event of a termination without cause. *Id.* ¶¶ 50, 53, 67–70; *id.*, Ex. D § 3(a)(i), (iii)–(iv).

As alleged in the Complaints, when the parties agreed to form the Company, Defendant assured Plaintiff that he could finish his degree at MIT, but later, acting

as the Company's sole director and Chief Executive Officer, Defendant purported to terminate Plaintiff "as an officer, employee and in all other capacities," citing the "need[] to have a Co-Founder who is dedicated full-time and working onsite with the team." Compl. ¶¶ 63, 73. Defendant then purported to repurchase Plaintiff's unvested shares. *Id.* ¶ 73. Premised on these allegations, the Complaints allege claims for (1) breach of the FCA under which Plaintiff was to share managerial authority, seeking "full and complete reinstatement of his equity interest" in the Company; (2) fraud and fraudulent inducement, seeking rescissory relief in connection with the CSPA; (3) breach of the CSPA, seeking "full and complete reinstatement of his equity interest" in the Company; (4) breach of the implied covenant of good faith and fair dealing in the FCA and CSPA; (5) quantum meruit; (6) unjust enrichment; and (7) breach of fiduciary duty. *Id.* ¶¶ 91–152. Plaintiff's prayer for relief seeks, among other remedies, rescissory damages relating to the CSPA; an order voiding the Company's repurchase of Plaintiff's shares; "compensatory, disgorgement, quantum meruit, and/or unjust enrichment damages"; and "punitive damages." *Id.* at 31–32.

On January 5, 2026, Plaintiff filed letters in the Chancery Action and the Superior Court Action asking both presiding judges to "endorse (i) the coordination of these parallel actions in the Superior Court, and (ii) the special designation of

Judge Rennie to serve as a Vice Chancellor pursuant to Del. Const. [a]rt. IV, § 13(2), to hear and consider the equitable aspects of this case." Ltr. Requesting Special Designation [hereinafter Pl.'s Ltr.], Dkt. 8. Defendant opposes this request. Ltr. Regarding Opp'n to Pl.'s Request to Consolidate and Cross Designate, Dkt. 10.

After consultation with Judge Rennie, I have determined not to endorse Plaintiff's request for cross-designation.[1] Special designation in this case would not "promote judicial economy, avoid the risk of inconsistent decisions between the actions, and . . . otherwise further the interest of justice," as Plaintiff argues. Pl.'s Ltr. at 2. The Court of Chancery has jurisdiction over Plaintiff's equitable claim for breach of fiduciary duty as well as his requests for equitable relief—reinstatement of his equity interest and rescissory damages—which feature prominently, if not predominantly, in the Complaints. *See* 10 *Del. C.* § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity.").[2] The Court of Chancery also has jurisdiction to hear Plaintiff's

[1] *See Guidelines for Requesting Special Designation of Judicial Officers in Court of Chancery Actions* (Nov. 19, 2024) ("[T]he judicial officer overseeing the case will determine in the first instance whether special designation is advisable and, if he or she agrees, endorse it. If the judicial officer overseeing the case does not believe a special designation is advisable, then no special designation shall be made.").

[2] *See also Prospect St. Energy, LLC v. Bhargava*, 2016 WL 446202, at *10 (Del. Super. Jan. 27, 2016) ("A fundamental aspect of the constitutional separation of law and equity in Delaware is that the Court of Chancery has exclusive jurisdiction to hear all matters and causes in equity."); *id.* ("The making of such a [designation] request may be appropriate

legal claims under the clean-up doctrine. *Getty Ref. & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 150 (Del. Ch. 1978) ("[I]t is settled law that when equity obtains jurisdiction over some portion of the controversy it will decide the whole controversy and give complete and final relief[.]" (quoting *Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576, 580 (Del. 1964))).  Thus, despite Plaintiff choosing to simultaneously file complaints in two courts that "essentially mirror each other and include both . . . legal and equitable claims," the Court of Chancery has jurisdiction to resolve the entire dispute.  Pl.'s Ltr., Draft Ltr. to the Chancellor at 2 n.2.  It is unnecessary to burden my colleagues on the Complex Commercial Litigation Division of the Superior Court, who already dedicate substantial resources to resolving Chancery matters through cross-designation procedures,[3] with the equitable aspects of this matter.

Although Plaintiff claims to promote judicial economy, his submission lays bare the real motivation for his designation request—a desire to seek punitive

---

when the need to assert an equitable claim or to seek equitable relief was *not apparent at the outset of a case* filed in the Superior Court *but becomes apparent after the case has progressed*, particularly when the assigned judicial officer has invested a significant amount of time becoming familiar with the factual and legal issues in the case.  That is not the situation here.") (emphasis added).

[3] *See In re Designation of Actions Filed Pursuant to 8 Del. C. § 111* (Del. May 30, 2025) (ORDER).

damages, which are not available in the Court of Chancery.  *Id.* at 4 (noting that "[Plaintiff] can only obtain . . . punitive damages, in the Superior Court").  Plaintiff seeks to end-run longstanding law holding that "punitive damages cannot be awarded in a suit in equity." *Fontana v. Julian*, 1978 WL 4980, at *3 (Del. Ch. Oct. 4, 1978).[4]  The desire to pursue punitive damages while seeking equity does not support special designation.  An alternative ruling would encourage the filing of duplicative complaints across multiple courts and incentivize judge-shopping, among other ill effects.  I therefore decline to endorse Plaintiff's request.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:    All counsel of record (by File & ServeXpress)

---

[4] *See also, e.g.*, *Read v. Del. Camera Club*, 1980 WL 6410, at *2 (Del. Ch. Apr. 22, 1980) ("[A] court of equity . . . does not grant punitive damages."); *Beals v. Wash. Int'l, Inc.*, 386 A.2d 1156, 1159 (Del. Ch. 1978) ("Traditionally and historically the Court of Chancery as the Equity Court is a court of conscience and will permit only what is just and right with no element of vengeance and therefore will not enforce penalties or forfeitures.").