**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STAYTERRA VACATIONS, LLC (f/k/a GSP PRIME BUYER, LLC), PRIME VACATIONS, LLC, and GSP PRIME HOLDINGS, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2025-1111-KSJM |
| SHAWN T. KALETA, BALI HAI JV LLC, TRI STAR PROPERTIES, LLC, TRISTAR PROPERTIES ACQUISITION PRIME LLC, TRISTAR SEASIDE TROPIC LLC, TRISTAR PD LLC, 791 JACARANDA LLC, 111 CEDAR AVE LLC, COCONUT BEACH RESORT LLC, 1015 FLEMMING ST LLC, and 171 MCKINLEY LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE VERIFIED AMENDED COMPLAINT**

1. The facts are drawn from the Verified Amended Complaint (the "Amended Complaint").[1] In September 2024, entities affiliated with private equity firm Garnett Station Partners—Plaintiffs StayTerra Vacations, LLC (f/k/a GSP Prime Buyer, LLC) and GSP Prime Holdings, LLC—acquired Plaintiff Prime Vacations, LLC (with StayTerra and GSP, "Plaintiffs"), a property rental management brand created by Defendant Shawn Kaleta. The acquisition comprised an Equity Purchase Agreement (the "Purchase Agreement"), a Property Management

---

[1] C.A. No. 2025-1111-KSJM, Docket ("Dkt.") 36 (Am. Compl.).

Agreement (the "Management Agreement"), a Contribution Agreement, and a Hotel Agreement.

2. Plaintiffs allege that after the acquisition closed, Kaleta began indirectly competing with Plaintiffs. Kaleta transferred dozens of properties, in many cases for $10, to his ex-wife, Jen Kaleta, and his girlfriend, Kiri Stewart. Jen Kaleta and Stewart then stopped using Plaintiffs' property management services. Instead, Stewart, an interior designer, formed Magnolia Cottages, LLC and Jen Kaleta incorporated AMI Premier Properties, Inc. Magnolia Cottages and AMI Premier then began offering property management services in Florida to the newly transferred properties.

3. Plaintiffs also allege that Kaleta assisted Jen Kaleta and Kiri Stewart with a shadow listing scheme. Jen Kaleta and Stewart used booking platforms to list properties Kaleta owned. Plaintiffs listed the exact same properties but for higher rates. Kaleta prevented double booking by blocking the properties for personal use whenever Stewart or Jen Kaleta booked a guest. This alleged scheme allowed Jen Kaleta and Stewart to capture revenue that Plaintiffs would have received.

4. Plaintiffs claim that Kaleta breached his obligations under the transactional agreements. They filed this suit against Kaleta and counterparties to some of the transactional agreements referred to as the "Hotel Defendants"[2] (with Kaleta, "Defendants"). Plaintiffs assert twelve Counts:

---

[2] The Hotel Defendants are Bali Hai JV LLC, Anna Maria Beach Resort LLC, Tri Star Properties, LLC, TriStar Properties Acquisition Prime LLC, Tristar Seaside

- Count I against Kaleta for breach of the Purchase Agreement's non-competition covenant;

- Count II against Kaleta for breach of the Purchase Agreement's non-solicitation covenant;

- Count III against Kaleta for breach of the Purchase Agreement's non-interference covenant;

- Count IV against Kaleta for breach of the Management Agreement;

- Count V against Kaleta for breach of the Purchase Agreement's and Management Agreement's implied covenants of good faith and fair dealing;

- Count VI against Kaleta for breach of the Contribution Agreement;

- Count VII against Kaleta for tortious interference of the Management Agreement;

- Count VIII against Defendants for breach of the Hotel Agreement, alleging failure to pay hotel fees;

- Count IX against Defendants for breach of the Hotel Agreement, alleging removal of access from property management software;

- Count X against Kaleta for anticipatory breach of the Hotel Agreement;

- Count XI against Kaleta for anticipatory breach of the Management Agreement; and

- Count XII against Defendants for account stated for failure to pay hotel fees.

5. Defendants have moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim.[3]

---

Tropic LLC, Tristar PD LLC, 791 Jacaranda LLC, 111 Cedar Ave LLC, Coconut Beach Resort LLC, 1015 Flemming St LLC, and 171 McKinley LLC.

[3] Dkt. 32 ("Defs.' Opening Br.") at i–ii; Dkt. 29.

3

6.    ***Rule 12(b)(1).*** Defendants' motion to dismiss for lack of subject matter jurisdiction is denied because Plaintiffs pled a basis for equitable jurisdiction in Counts I through III and the court may exercise jurisdiction over the remaining claims under the clean-up doctrine.

a.    The court "can acquire subject matter jurisdiction over a cause in only three ways, namely, if (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[4] Plaintiffs seek injunctive relief—to enforce restrictive covenants to prevent Kaleta from interfering with Plaintiffs' business and customers. The loss of customer relationships and goodwill can qualify as irreparable harm warranting injunctive relief.[5]

b.    "Fundamentally, once a right to relief in Chancery has been determined to exist, the powers of the Court are broad and the means flexible to shape and adjust the precise relief to be granted so as to enforce particular rights and liabilities legitimately connected with the subject matter of the action."[6] Under the clean-up doctrine, "the court may also exercise ancillary

---

[4] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC,* 859 A.2d 989, 997 (Del. 2004) (internal citations omitted).

[5] *L & W Ins., Inc. v. Harrington*, 2007 WL 2753006, at *11 (Del. Ch. Mar. 12, 2007) ("The protection of substantial business relationships and goodwill are legitimate business interests whose impairment may give rise to irreparable harm.").

[6] *Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576, 580 (Del. 1964) (citing 1 John N. Pomeroy, *A Treatise on Equity Jurisprudence* § 115 (5th ed. 1941)).

4

jurisdiction over purely legal causes of action that are 'part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid piecemeal litigation.'"[7] If a plaintiff has adequately pled a basis for subject matter jurisdiction, then the court applies a multi-factor analysis to determine whether to assert ancillary jurisdiction.[8] Those factors include judicial efficiency.[9]

c. Defendants argue that this court lacks subject matter jurisdiction because money can remedy any alleged harms. But they ignore that the Amended Complaint seeks injunctive relief to enforce the restrictive covenants at issue in Counts I through III.[10] As discussed below, Counts I through III state a claim. Plaintiffs have thus pled a basis for equitable jurisdiction. Judicial efficiency warrants exercising jurisdiction over the remaining Counts under the clean-up doctrine. This court therefore has subject matter jurisdiction over all claims in this action.

---

[7] *Rodriguez v. Great Am. Ins. Co.*, 2021 WL 4892216, at *3 (Del. Ch. Oct. 20, 2021) (quoting *Kraft v. WisdomTree Invs. Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016)).

[8] *Acierno v. Goldstein*, 2004 WL 1488673, at *5 (Del. Ch. June 25, 2004) (citing *Clark v. Teeven Hldg. Co., Inc.*, 625 A.2d 869, 882 (Del. Ch. 1992)) (listing the factors as "whether retention of the claims will: 1) resolve a factual issue which must be determined in the proceedings; 2) avoid a multiplicity of suits; 3) promote judicial efficiency; 4) do full justice; 5) avoid great expense; 6) afford complete relief in one action; or 7) overcome insufficient modes of procedure at law").

[9] *Id.*

[10] Am. Compl. ¶¶ 102–17.

5

7. ***Rule 12(b)(2).*** Defendants' motion to dismiss Counts IV, V, and VII through XII for lack of personal jurisdiction is denied based on the forum selection provision in the Purchase Agreement.[11]

a. "When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[12] At the pleading stage, "plaintiffs need only make a *prima facie* showing of personal jurisdiction and 'the record is construed in the light most favorable to the plaintiff.'"[13] The requirement that a court have personal jurisdiction, however, is a waivable right.[14] "A defendant can agree to a court's exercise of personal jurisdiction."[15] "Where the parties to the forum selection clause have consented freely and knowingly to the court's exercise of jurisdiction, the clause is sufficient to confer personal jurisdiction on a court."[16]

---

[11] "After Plaintiffs' causes of action arising from the [Purchase] and Contribution Agreement[s] have been dismissed under Rule 12(b)(6) . . . there are no viable claims[.]" Defs.' Opening Br. at 32. Counts I through III and VI arise from the Purchase and Contribution Agreements. Counts IV, V, and VII through XII thus remain.

[12] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[13] *Id.* (internal citation omitted) (quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 178759, at *3 (Del. Ch. Mar. 31, 2003)).

[14] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).

[15] *In re Pilgrim's Pride Corp. Deriv. Litig.*, 2019 WL 1224556, at *10 (Del. Ch. Mar. 15, 2019).

[16] *Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013).

6

b.     The Purchase Agreement contains a forum selection clause. Through that clause, Kaleta consented to this court's exercise of personal jurisdiction over him in connection with any lawsuit "among the Parties arising in whole or in part under or in connection with this Agreement or any other Transaction Document . . . ."[17] The Purchase Agreement defines a "Transaction Document" as "this Agreement, the Seller Documents and the Buyer Documents."[18] In turn, "Seller Documents" are "this Agreement and each other agreement, document, instrument or certificate contemplated by this Agreement to be executed by a Seller or a Company in connection with the consummation of the Transactions . . . ."[19] Section 2.8(b) states that the Hotel and Management Agreements are closing deliverables.[20] Accordingly, the two are Seller Documents, which are Transaction Documents, that Kaleta signed as owner.     Plaintiffs have sued based on violations of the Hotel and Management Agreements, so the claims "arise in whole or in part" under those Transaction Documents.  Therefore, the Purchase Agreement's forum selection applies.  The court thus has personal jurisdiction over Kaleta.

c.     The forum selection provision also gives the court personal jurisdiction over the Hotel Defendants, although they did not sign the Purchase Agreement.  To bind a non-signatory entity to a forum selection

---

[17] Am. Compl., Ex. A (Purchase Agreement) § 8.3(b).

[18] *Id.*, Ex. A at A-15.

[19] *Id.*, Ex. A at A-14.

[20] *Id.* § 2.8(b).

7

clause, the court asks three questions: "First, is the forum selection clause valid? Second, are the defendants third-party beneficiaries, or closely related to, the contract? Third, does the claim arise from their standing relating to the . . . agreement?"[21]

d.     The first and third questions support exercising jurisdiction. Defendants do not dispute the validity of the forum selection clause.[22] And the claim arises from the Purchase Agreement because the Hotel Agreement is a Transaction Document under the Purchase Agreement and involves the management of hotels. In fact, the property management business goes to the heart of the value exchanged in the Purchase Agreement.

e.     That leaves the second question. A party is closely related to a signatory if "(1) [the party] receives a direct benefit from the agreement; or (2) it was foreseeable that [the party] would be bound by the agreement."[23] In *Neurvana Medical, LLC v. Balt USA, LLC*, this court held an affiliate did not receive a direct benefit under a purchase agreement with a forum selection clause.[24] The court reasoned that the affiliate itself did not make the acquisition and any profits it received would come under separate agreements

---

[21] *Neurvana Medical, LLC v. Balt USA, LLC*, 2019 WL 4464268, at \*3 (Del. Ch. Sep. 18, 2019) (quoting *Capital Gp. Cos. v. Armour*, 2004 WL 2521295, at \*5 (Del. Ch. Oct. 29, 2004)).

[22] *Armour*, 2004 WL 2521295, at \*6 ("Forum selection clauses are presumptively valid and have been regularly enforced.").

[23] *Weygandt v. Weco, LLC*, 2009 WL 1351808, at \*4 (Del. Ch. May 14, 2009) (internal citations omitted).

[24] 2019 WL 4464268, at \*4.

unrelated to the purchase agreement.[25] The court then declined to expand the foreseeability prong.[26] But it did note that Delaware courts have held entities bound to forum selection provisions "in the controller context, where the signatory controls the non-signatory involved in the transaction."[27] Here, Kaleta signed the Hotel Agreement as the "Owner" and "Manager" of the Hotel Defendants.[28] Kaleta's signature indicates Kaleta controlled the Hotel Defendants, making it foreseeable for them to be bound under the Hotel Agreement. The court thus has personal jurisdiction over the Hotel Defendants. Defendants' motion to dismiss for lack of personal jurisdiction is denied.

8.    ***Rule 12(b)(6).*** Defendants move to dismiss Counts I through VII, XI, and XII for failure to state a claim. "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[29] When considering a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably

---

[25] *Id.* ("In any event, the mere 'contemplation' of a benefit does not directly confer one.").

[26] *Id.* at *7–8.

[27] *Id.* at *5.

[28] *See* Am. Compl., Ex. C.

[29] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

conceivable set of circumstances susceptible of proof."[30] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[31]

9. Defendants' motion to dismiss Counts I, II, III, and VI for breach of contract against Kaleta is denied. To prevail on a claim for breach of contract, a party must demonstrate the existence of a contract, the breach of an obligation imposed by the contract, and harm resulting from the breach.[32] Plaintiffs have adequately alleged in Counts I through III and VI that Kaleta breached the restrictive covenants in the Purchase Agreement and the goodwill provision in the Contribution Agreement.

a. In Count I, Plaintiffs claim that Kaleta breached the non-competition provision of the Purchase Agreement. That provision states: "[Kaleta] shall not, directly or indirectly (through an Affiliate or otherwise) . . . (i) own, manage or control, invest in, become an equity holder of or become engaged or serve as an officer, director, manager, employee, agent, consultant, advisor, contractor or representative of, any Person that engages in the Business within the Restricted Territory[.]"[33] Jen Kaleta owns AMI Premier Properties, Inc., which provides property management services in Florida. She

---

[30] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[31] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[32] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[33] Purchase Agreement § 6.6(a)(i).

is also Kaleta's ex-wife. Kiri Stewart owns Magnolia Cottages, LLC, which also provides property management services in Florida. She is Kaleta's girlfriend. Plaintiffs allege that Kaleta transferred numerous properties to Jen Kaleta and Stewart for $10 each and that Stewart lacks experience in property management.[34] Given his relationships to Jen Kaleta and Stewart, and Stewart's lack of experience in the industry, it is reasonably conceivable that Kaleta serves as a "consultant, advisor, or contractor" for AMI Premier and Magnolia Cottages. It is thus reasonably conceivable that Kaleta breached the non-competition provision of the Purchase Agreement. Count I states a claim.

b.       In Count II, Plaintiffs allege that Kaleta breached the non-solicitation of customers provision in the Purchase Agreement. That provision states: "[Kaleta] shall not, directly or indirectly (through an Affiliate or otherwise) . . . induc[e] or attempt[] to induce any Protected Person [which includes any owner of a vacation property who has contracted with Prime for property management services] to refrain from or cease doing business with the Companies or reduce the level of business it does with the Companies or Buyer . . . ."[35] Plaintiffs allege that Kaleta assisted Jen Kaleta and Stewart with a shadow listing scheme, posting virtually identical listings to Prime's

---

[34] Am. Compl. ¶ 15 ("Indeed, in or around August 2025, Prime's Chief Operating Officer, John Munn, asked Ms. Stewart why she was getting into property management given that her background is in interior design and she pointed her finger at Kaleta."); *id.* ¶ 70 (stating that Stewart "is an interior designer by trade and not a real estate developer").

[35] Purchase Agreement § 6.6(a)(iii)(A)(4).

11

listings on Airbnb to induce Prime's customers to rent from them. The Amended Complaint connects Kaleta to that practice through his relationships with the actors, the coordinated conduct, and the identical listings. Based on these allegations, it is reasonably conceivable that Kaleta indirectly induced customers away from Prime in breach of the non-solicitation provision of the Purchase Agreement. Count II states a claim.

c.       In Count III, Plaintiffs allege that Kaleta breached the non-interference provision of the Purchase Agreement. That provision states: "[Kaleta] shall not, directly or indirectly (through an Affiliate or otherwise) . . . intentionally interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, between Buyer, the Companies, or any of their respective Affiliates and any Protected Persons[.]"[36] Plaintiffs allege that each of the vacation rental properties that terminated their relationship with Prime to engage with AMI Premier or Magnolia Cottages was previously owned or controlled by Kaleta, a business associate, or a close friend. It is thus reasonably conceivable that Kaleta breached the non-interference provision of the Purchase Agreement. Count III states a claim.

d.       In Count VI, Plaintiffs claim that Kaleta breached the Contribution Agreement, which required that Kaleta contribute his "Personal Goodwill" to Plaintiffs. Kaleta's Personal Goodwill includes his business and reputation in the industry. The same allegations that make it reasonably

---

[36] *Id.* § 6.6(a)(iii)(B).

12

conceivable that Kaleta breached the restrictive covenants render it reasonably conceivable that Kaleta has failed to contribute his Personal Goodwill to Plaintiffs. Count VI states a claim.

10. Counts IV, V, VII, XI, and XII, which are a mix of contract and tort claims, fail for a variety of reasons.

a. In Count IV, Plaintiffs claim that by transferring properties subject to the Management Agreement without Plaintiffs' consent, Kaleta breached the Management Agreement. The relevant provisions are Sections 3(b), 19, and 20 of the Management Agreement. Section 3(b) permits the transfer of property to a third-party if the third party agrees to either "enter into a Property Rental and Management Agreement . . . on substantially the same terms and conditions set forth in this Agreement and for a term no less than one (1) year" or "represents that it does not intend to utilize the services of any third-party property management company."[37] Section 20 also governs the sale of properties. It requires that the owner "notify [the] Agent in writing no later than thirty days after signing a listing contract."[38] Plaintiffs concede that the plain language of Sections 3(b) and 20 allow Kaleta to sell properties, as he did, subject to conditions, which he met. Yet Plaintiffs argue that Section 19 qualifies these provisions. Section 19 states that termination

---

[37] Am. Compl., Ex. B (Management Agreement) § 3(b).

[38] *Id.* § 20.

13

of the Management Agreement may occur with mutual consent.[39] Plaintiffs argue that a transfer or sale is an effective termination, which thus requires their consent under Section 19. But Plaintiffs' argument finds no support in the plain language of the agreement. A transfer or sale is a legally distinct concept from a termination. Sections 3(b) and 20 govern transfers and sales. Section 19 governs terminations. Had the parties wished to subject transfers and sales permitted by Sections 3(b) and 20 to the consent requirement of Section 19, they could have done so.

b. In Count V, which is pled in the alternative, Plaintiffs claim that Defendants' conduct at issue in Counts I through III breached the covenant of good faith and fair dealing implied in the Purchase Agreement and Management Agreement. Delaware law governs the Purchase Agreement.[40] To plead an implied covenant claim under Delaware law, a plaintiff must identify both a gap in the contract and an implied provision that would fill that gap, which the parties would have agreed upon at the time of bargaining.[41] Plaintiffs make no effort to do so. Florida law governs the Management

---

[39] *Id.* § 19.

[40] Purchase Agreement § 8.3(a) ("The interpretation and construction of this Agreement or any other Transaction Document, and all matters relating hereto (including the validity or enforcement of this Agreement), shall be governed by the laws of the State of Delaware . . . .").

[41] *See Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2020 WL 5816759, at *10 (Del. Ch. Sep. 30, 2020) (dismissing implied covenant claim because the claimant "neither alleges . . . nor argues in its brief that there is a contractual gap or unanticipated development in the Purchase Agreement").

14

Agreement. Under Florida law, a claim for breach of the implied covenant of good faith and fair dealing requires that an express provision of the contract be breached.[42] As discussed above, Plaintiffs fail to state a claim for breach of the Management Agreement. Count V thus fails to state a claim.

c. In Count VII, Plaintiffs claim that Kaleta, a party to the Management Agreement, interfered with the Management Agreement. Under both Florida and Delaware law, a party to a contract cannot tortiously interfere with it.[43] Count VII thus fails to state a claim.

d. In Count XI, Plaintiffs claim that Kaleta anticipatorily breached the Management Agreement. Florida law governs this analysis.[44] Under Florida law, anticipatory breach requires words or conduct demonstrating a

---

[42] *See, e.g.*, *Grant v. Centerstate Bank*, 2021 WL 9594009, at *3 (M.D. Fla. July 6, 2021) ("To maintain a claim for breach of the implied covenant of good faith and fair dealing, an express provision of the contract must have been breached."); *Karp v. Bank of Am., N.A.*, 2013 WL 1121256, at *3 (M.D. Fla. Mar. 18, 2013) (explaining that under Florida law an implied covenant "claim cannot be maintained in the absence of a breach of an express term of a contract" (internal quotation marks omitted)).

[43] *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. Dist. Ct. App. 1980) (explaining that "a cause of action for interference does not exist against one who is himself a party to the contract allegedly interfered with"). In briefing, Defendants cited Delaware law for this proposition. Defs.' Opening Br. at 55 ("It is axiomatic under Delaware law that a party cannot tortiously interfere with a contract to which it is a party." (citing *Tenneco Automotive, Inc. v. El Paso Corp.*, 2007 WL 92621, at *5 (Del. Ch. Jan. 8, 2007))).

[44] The Management Agreement states that Florida law governs all matters related to the agreement, including interpretation, construction, validity, and enforcement. Management Agreement § 29. In Florida, "an anticipatory repudiation creates a cause of action for breach of contract[.]" *Twenty-Four Collection, Inc. v. M. Weinbaum Const., Inc.*, 427 So. 2d 1110, 1112 (Fla. Dist. Ct. App. 1983). The claim thus falls within the choice-of-law provision because anticipatory breach is in effect a breach and Florida law governs breaches of the Management Agreement.

15

clear intent to refuse future performance.[45]  To support this claim, Plaintiffs rely on Kaleta's statement that he intended to continue transferring properties.  But as explained above, the Management Agreement permits transfers under certain conditions.  Exercising a contractual right is not a refusal to perform.  Because Plaintiffs have not alleged facts supporting a repudiation of the Management Agreement, Count XI fails to state a claim.

e.  In Count XII, Plaintiffs request an "Account Stated" for fees paid under the Hotel Agreement.  This request for an accounting is an equitable remedy, typically awarded for breach of fiduciary duties.  Plaintiffs seek an accounting for breach of contract.  They give no basis for seeking that relief and expressly abandoned the claim.[46]  Count XII fails to state a claim.

11.  Counts I, II, III, VI, VIII, IX, and X state a claim.  Counts IV, V, VII, XI, and XII are dismissed under Rule 12(b)(6).

/s/ *Kathaleen St. J. McCormick*
Chancellor
May 27, 2026

---

[45] *Alvarez v. Rendon*, 953 So. 2d 702, 709 (Fla. Dist. Ct. App. 2007).

[46] Dkt. 43 at 25:9–12 (TRANSCRIPT) ("About an hour before the hearing, counsel for plaintiffs emailed me and said, you know, we didn't respond to [Count XII] in our brief.  That's because we have abandoned that claim.").

16